Richard **GROVER** and Susie Grover, Plaintiffs/Appellants/ Cross–Respondents,

v.

Alan J. **GROVER**, Defendant,

and

Wal–Mart Stores, Inc., Defendant/Respondent/ Cross–Appellant.

Nos. 71938, 71947.

Missouri Court of Appeals, Eastern District, Division One.

May 26, 1998.

Motion for Rehearing and/or Transfer to Supreme Court Denied July 28, 1998.

Application for Transfer Denied Aug. 25, 1998.

William H. Pickett, David T. Greis, Kansas City, for appellants.

Stefan J. Glynias, Adrienne McGonigle, Todd L. Beekley, St. Louis, for respondent.

GRIMM, Presiding Judge.

Son[1] sued his father and Wal–Mart for injuries he received when son's pickup truck rolled off a set of Wal–Mart's vehicle ramps. Although the legal file does not contain the jury's verdicts, the trial court's judgment reflects that the jury found son's damages to be $115,000 and his wife's damages at $22,500. The judgment reflects that the jury apportioned fault as follows: 80% to son; 10% to father; and 10% to Wal–Mart. Thus,

---

**1.** There are actually two plaintiffs, son and his wife. Wife's claim is solely for loss of consortium. For ease of reading, we refer to the plaintiffs in the singular and plaintiff as son.

the trial court entered judgment against defendants for son for $23,000 and for wife for $4,500.

Father did not appeal, however both son and Wal–Mart appeal. Son's points include allegations that the trial court erred: (1) in failing to grant a mistrial or new trial because of defense counsel's prejudicial closing arguments; (2) in giving a comparative fault jury instruction; and (3) in admitting and excluding evidence.

Wal–Mart's cross appeal raises one point with three subpoints. It contends the trial court erred in failing to direct a verdict in its favor because son failed to establish: (1) the ramps were in a defective and unreasonably dangerous condition when sold; (2) the ramps were used in a reasonably anticipated manner; and (3) proximate cause between any design defect in the ramps and son's injuries. We affirm.[2]

## Background

Son and father frequently worked together on various projects, dividing up the work. This included the mechanical repair of motor vehicles. After father retired from his job, he established a workshop in the garage behind his house. Son frequently came and assisted him in the workshop.

In 1979, father's wife purchased two vehicle ramps at Wal–Mart and gave them to father as a gift. The ramps were used to raise vehicles about a foot so that work could be done under them.

On April 6, 1990 son took his pickup truck to father's garage to work on it. The truck is a 1977 Series 15 GMC heavy duty half-ton 4 × 4 pickup, with full-time automatic transmission. It has two drive shafts, one for the front wheels and one for the rear wheels.

It is also equipped with a "lock-out" hub on the front wheels. Engaging the hub requires going to the front wheels and turning a dial indicator to lock or unlock the wheels, making the vehicle either two or four wheel drive.

Son told father he had to replace a gear at the bottom of the speedometer cable. Son drove the truck up onto the ramps while father guided him from in front of the ramps. After the truck started to move up the ramps, father moved to his right and watched the left front driver's side and signaled son to stop when the tire was squarely on the left ramp.

Son put the truck in "park." He does not remember whether he applied the emergency brake or not. As he got out of the truck he said something like "you'll block it won't you," and father responded he would. Father normally did this type of thing for plaintiff.

In the past, different items were used to block the wheels, including bricks. On the day of the accident, father was walking by an air compressor to go outside to get some bricks when son indicated he would have to wait for the exhaust to cool before working on the truck. Because the air compressor needed to have some work done on it, the two proceeded to do that work. Then they talked awhile. Father never got the bricks to block the wheels, son never saw father go behind the truck, the wheels were never blocked, and son never looked to see if the wheels were blocked.

The truck was on the ramps for at least twenty minutes before son got under it. He fixed the speedometer cable located on the driver's side. He then went to the opposite side of the truck to put grease in the front differential. Father then left the garage to go check on his garden.

Son then started to disconnect the drive shaft. To do this, he had to unhook the universal joint, which was held in place by four bolts. He removed three of the bolts and began to remove the fourth, when he heard or felt something pop. The drive shaft began to turn and the truck began to roll off the ramps.

He reached up and grabbed the universal joint to try to stop it from turning, but was unable to stop it. He saw the truck starting to descend down the ramps, and raised his

**2.** During the pendency of the appeal, father died. His wife was appointed defendant ad litem and was substituted for father pursuant to Rule 52.13(a).

left leg to try to push away from it. As he tried to get out from underneath the truck, it rolled onto him, severely breaking his leg. He had worked under the truck for twenty to forty minutes before the accident occurred, but had not put the vehicle in four-wheel lock.

## SON'S APPEAL

### I. Closing Argument

In his first point, son alleges the trial court erred in failing to grant a mistrial and a new trial "based on the unduly prejudicial conduct of defense counsel in closing arguments." In his lengthy point, he refers to more than ten instances of alleged misconduct. He argues "the conduct of defense counsel was sufficiently egregious that a new trial should have been granted."

In his motion for new trial, son refers to only one instance of alleged misconduct. There, he contended the trial court erred in overruling his objection and request for a mistrial concerning a statement father's counsel made. In that motion, son complains defense counsel asserted "that counsel for plaintiffs fabricated the facts and evidence of the case it (sic) presented to the jury during trial." Because the other alleged instances of misconduct were not raised in the new trial motion, they are not preserved for review. *Beis v. Dias*, 859 S.W.2d 835, 841 (Mo.App. S.D.1993).

In his opening statement, son's counsel explained that he was going to give an outline of what the evidence will be. "It's a story that you will hear, and you will find that there's never been a father and a son that's been any closer."

In his opening statement, father's counsel also referred to a story. After stating some evidence different from that mentioned by son's counsel, father's counsel said, "You will have to wait until you hear all of the evidence then you will see there's two sides to this story."

In father's counsel's closing argument, he attacked the credibility of several witnesses, suggesting that son's injuries and damages were inflated. Counsel argued that son's injuries did not diminish his earning capacity. He argued son's job as a marina operator remained the same before and after the accident, and that son wanted it that way. He pointed out that four years after the accident, son had renewed his lease to run a marina for ten years. He then argued that if son was ever going to get out of that business, that is the time he would have done so.

Father's counsel then said:

Ladies and gentlemen, plaintiff's attorney told you in opening statement, and he used the words "I am going to tell you a story." And that's what he's done since the day he was hired is fabricate a story.

Son's attorney objected that it was "highly improper." The trial court overruled the objection, telling the jury to be governed by its recollection of the evidence. After an unrelated comment, son's attorney asked to approach the bench. At this time, he moved for a mistrial. He argued that telling "the jury that a lawyer has fabricated something" was totally inappropriate and prejudicial. Father's attorney pointed out that it was closing argument, and that the evidence showed that son's attorney had sent son to four individuals, including his treating physician. He contended he had "the right to comment on that." The trial court overruled the objection and denied the motion for a mistrial.

A trial court is given broad discretion in ruling on the propriety of a closing argument to the jury and will suffer reversal only for an abuse of discretion. *Moore v. Missouri Pacific R. Co.*, 825 S.W.2d 839, 844 (Mo.banc 1992). In *Moore*, defense counsel described the case as an attempt by plaintiff to "hoodwink" and "flimflam" the jury. *Id.* at 845. The *Moore* court observed that these were strong characterizations, which could describe a well-planned scheme to deceive other persons by hiding the truth. "However, these words accurately reflect defendant's theory of the case and are a reasonable inference that can be drawn from the evidence before the jury" and denied the point. *Id.*

In the case before us, father's counsel used the word "fabricate." That term has

several meanings. According to WEBSTER'S NINTH NEW COLLEGIATE DICTIONARY 443 (1991) it can mean (1) to construct, manufacture, (2)(a) invent, create, (b) to make up for the purpose of deception. Although the word can have a bad connotation, the first two definitions do not. The trial court was in a much better position to determine the prejudicial effect, if any, of this argument and we defer to its broad discretion. Point denied.

## II. Comparative Fault Instruction

Son's second point alleges the trial court erred in giving Instruction 11, a comparative fault instruction. He first argues that comparative fault principles have no application in this case and if they do, he argues that the instruction was erroneous for other reasons.

We first note that the none of the instructions submitted or used at trial are in the legal file. Rule 81.12 places the duty on an appellant to provide "all of the record, proceedings and evidence necessary to the determination of all questions to be presented." Son failed to meet this obligation. However, son does set out the instruction in the argument portion of his brief and no one has challenged its accuracy. The instruction states:

In your verdict you must assess a percentage of fault to [son], whether or not defendants were partly at fault, if you believe:

First, when the automobile ramps were used, [son] either:

failed to ensure that chocks were placed behind the rear tires of the truck, or

failed to engage the emergency brake on the truck, or

failed to put the truck in 4-wheel lock, or disconnected the drive shaft of the truck thereby causing the vehicle to roll off the ramps, and

Second, [son] unreasonably failed to appreciate the danger involved in the use of the ramps or the consequences thereof and unreasonably exposed himself to said danger, or [son] failed to undertake the precautions a reasonably careful user of the ramps would take to protect himself against dangers which a reasonably careful

user would reasonably appreciate under the same or similar circumstances, and

Third, such failure directly caused or directly contributed to cause any damage [son] may have sustained.

Son contends that his verdict directing instruction was based on section 323, Restatement of Torts (Second). He argues that in such a situation, "fault may not be compared between the person who agrees to perform the undertaking and the person who relies on him to do it." Stated another way, he contends that no comparative fault instruction should have been given. He suggests that this is a question of first impression.

■ A generous reading of son's motion for new trial could conclude that son raised this issue in that motion. However, at the instruction conference, son did not object on the basis that no comparative fault instruction should be given. Rather, his objection was directed to the specific wording of some of the submissions.

Since January 1, 1994, a party may not assign instructional error on appeal "unless that party objects thereto before the jury retires to consider its verdict, *stating distinctly the matter objected to and the grounds of the objection.*" Rule 70.03. Thus, in the absence of a distinct objection that no such instruction should be given and the grounds for making that objection, son's first contention is not preserved and is therefore denied.

Son next argues that there "are four acts of 'negligence' which, according to instruction 11, would be sufficient to support comparative fault against *either* Defendant in this case. None of these acts are supported by substantial evidence." (son's emphasis). We disagree.

■ Concerning the placement of chocks behind the rear tires, son's counsel did not object to that submission on the basis of lack of evidence at the instruction conference. Thus, the objection is not preserved. Rule 70.03. Further, son testified that he never saw father block the wheels, nor did he ever look to see whether the wheels had been blocked.

■ On the failure to engage the emergency brake, at the instruction conference, son's counsel objected, saying there was no proof that there was any working emergency brake. We disagree. Circumstantial evidence supports the submission. Testimony established that the pickup was licensed and in order to pass the inspection, the vehicle must have a working emergency brake.

Although son did not recall if the pickup had emergency brakes, he said that if it did, he did not "have any memory of applying them or not applying them." Later, he agreed that if the pickup "had the emergency brake applied, the parking brake applied, this incident wouldn't have occurred."

■ Pertaining to the allegation of failure to put the truck in 4-wheel lock, son testified that the truck "had the lock out hub on the front wheels." Further, other testimony established that if the pickup had been placed in 4-wheel lock, it would have prevented the accident.

■ Finally, concerning the last submission involving the disconnection of the drive shaft, at the instruction conference, son's sole objection was that it was "argumentative." In his motion for new trial, he did not complain about this submission. Now, on appeal, he abandons those arguments and complains that it is not supported by the evidence.

This submission was supported by the evidence. Son's expert acknowledged that if the "drive shaft had not been disengaged by [son] that day," the pickup would not have rolled down the ramps. Father's expert gave similar testimony.

One final comment on this point. We do not approve Instruction 11; it is not a model and could easily be improved. However, we do not perceive any prejudicial error on any preserved error. Point denied.

### III. Admission/Exclusion of Evidence

Son's third point alleges numerous errors in the admission or exclusion of evidence. We have examined each of them and determined that as to some alleged errors, no objection was made. As to others, the objection made at trial is not the one being raised on appeal. Finally, the trial court's overruling of an objection concerning the conduct of an experiment and the exclusion of a photograph were well within its discretion.

No jurisprudential purpose would be served by an extended discussion of this point. No error of law appears. This point is denied pursuant to Rule 84.16(b).

### IV. Cumulative Errors

Son's last point alleges that the trial court "erred in denying [his] motion for a new trial, because the errors in the trial, in the aggregate, if not singly, mandated the granting of a new trial."

We have found that the trial court did not commit the errors son alleges and preserved. Thus, there is no aggregate error requiring reversal. Point denied.

### WAL–MART'S CROSS–APPEAL

For its sole point, Wal–Mart alleges the trial court erred in failing to direct a verdict at the close of all the evidence. It contends son "failed to establish that: (a) the automobile ramps in question were in a defective and unreasonably dangerous condition when sold; (b) the automobile ramps sold by this defendant were used on the ramps in a reasonably anticipated manner where [son] failed to take the appropriate precautionary measures; and (c) a proximate causal relationship between the purported design defects of the automobile ramps and [son's] alleged injuries where the evidence showed [son's] own actions caused the accident."

■ The Missouri Supreme Court adopted the rule of strict liability in tort as stated in 2 Restatement, Law of Torts, Second, section 402A in 1969. *Keener v. Dayton Elec. Mfg. Co.,* 445 S.W.2d 362, 364 (Mo.1969). To make a submissible case, a plaintiff must show that (1) defendant sold the product in the course of its business, (2) the product was then in a defective condition unreasonably dangerous when put to a reasonably anticipated use, (3) the product was used in a manner reasonably anticipated, and (4) plaintiff was damaged as a direct result of such defective condition as existed when the product was sold. MAI 25.04.

Son's expert witness identified himself as a mechanical engineer and forensic consulting engineer. He had evaluated the ramps and stated that they were defectively designed. The defect was primarily on the top, flat portion of the ramp on which the tires rested. The expert said that the ramps should have been designed to have a "pocket" or a little uptake at the "very tail end of the top surface." Such an uptake would "form a barrier for a tire to roll down." In other words, he said, "there's no real barrier here to prevent a vehicle from rolling off the top surface."

The expert demonstrated the problem by showing another set of ramps that had the barrier. He pointed out that this set had "a much more sharply defined pocket of the top surface just before you start down the ramp." Such a design, he said, "precludes the vehicle rolling off the ramp." According to the expert, such a design would have prevented the truck from rolling down the ramp, regardless of whether the rear wheels were blocked or not.

In addition, the expert testified that the ramps were unreasonably dangerous when put to a reasonable foreseeable use. The foreseeable use was to elevate a motor vehicle so that work could be performed on it.

Son's evidence was sufficient to submit the issue to the jury. Point denied.

The trial court's judgment is affirmed.

PUDLOWSKI and GARY M. GAERTNER, JJ., concur.