Zacqrey L. WOODS, Gregory L. Hanson, Chris Ames, Matthew Hayes, Matthew McDaniel, James Williams, Randy Fleming, Michael Lowry, and Tony Garner, Plaintiffs,

Gregory L. Hanson,
Appellant/Respondent,

v.

FRIENDLY FORD, INC., and Jay Wise, Defendants/Respondents/Cross–Appellants.

Nos. 28110, 28187, 28189.

Missouri Court of Appeals,
Southern District,
Division Two.

April 3, 2008.

Mark V. Bodine, Bennett, Bodine & Waters, P.A., Shawnee, KS, for Appellant.

David J. Roberts, Case & Roberts, P.C., Kansas City, MO, for Respondent Friendly Ford, Inc.

Kevin D. Case, Case & Roberts, P.C., Kansas City, MO, for Respondent Jay Wise.

GARY W. LYNCH, Chief Judge.

Following a jury trial, Plaintiff–Appellant Gregory L. Hanson ("Hanson") appeals a verdict in favor of Defendants–Respondents Friendly Ford, Inc. ("Friendly Ford") and Jay Wise on his claim for assault and battery. Defendants appeal the trial court's denial of their motion to amend the judgment to award costs and attorney fees. These appeals were consolidated.

*Factual and Procedural Background*

Initially, this action was filed August 28, 2001, by Hanson and nine other employees of Friendly Ford, Inc., a franchise dealer for the Ford Motor Company, located in Springfield, Missouri. Plaintiffs[1] named Ford Motor Company,[2] Friendly Ford, Inc. ("Friendly Ford"), and Jay Wise as defendants. Jay Wise is co-owner of the franchise.

Plaintiffs' second amended petition was filed May 4, 2004, alleging that Jay Wise assaulted and battered plaintiffs, in that he "throws elbows, arms, and shoulders into the plaintiffs" and "physically struck plaintiffs and other employees by snapping their ears with combs, snapping their arms with combs, slapping the back of their heads, and poking his finger into their chests." Plaintiffs alleged that Wise's actions "were within the course and scope of his employment and were done in the further interest of the business pursuits of defendant friendly Ford, Inc., and naturally arose from the performance of defendant Wise's work for defendant Friendly Ford." Plaintiffs requested punitive damages and further alleged that Friendly Ford was "vicariously liable for the acts of defendant Wise[,] as they have been performed in the course and scope of his employment with Friendly Ford, Inc." On the same date, the trial court sustained defendants' motion to sever and ordered separate trials for all plaintiffs.

Trial on Hanson's claims was the first such trial. Between May 11 and May 13, 2004, the jury heard evidence on Hanson's claims. Hanson testified that Jay Wise would typically sneak up from behind and snap him and other employees in the ear with a flexible plastic comb which Wise named "Mr. Snappy." Hanson stated that in doing so, Wise would laugh and smile and asked if he liked earrings. Hanson claimed that "it hurt like hell." There was also testimony from Hanson that Wise struck at, hit, and grabbed his genitals, poked him in the chest, lunged at and shoved him in a hallway, and caused him to strike himself on the side of his head with a telephone receiver. Hanson stated that the effect of Wise's behaviors was demeaning, belittling, humiliating, upsetting, disgusting, and that he was offended when these actions were directed at him. He described the strikes to the genitals as being uncomfortable and painful, although he stated he never sought medical attention.

Jay Wise admitted that he struck Hanson in the ear with his comb and caused Hanson to strike himself on the side of his head with the telephone receiver. He further testified that he feigned attempts to strike Hanson, as well as other employees, in the genitals, but he did not remember grabbing his genitals. Wise stated that he did so in horseplay, that it was done "in good fun" and that certain of these actions were directed at him in return. Wise testified that he did not intend to harm or offend anyone and that he wanted to be thought of as "one of the guys." Wise called witnesses who testified that there was a lot of "down time" at the dealership and that during these times, employees engaged in horseplay and played practical jokes on each other.

At the close of all of the evidence, the jury returned a verdict against Hanson and in favor of Friendly Ford and Wise. These appeals followed.

---

1. Two plaintiffs subsequently dismissed their claims against the defendants: Zacqrey L. Woods and Anthony J. Frochock.

2. Ford Motor Company was later dismissed from the lawsuit.

### Discussion

### Hanson Appeal—No. 28110

Hanson presents five points relied on, and we address them in the order presented.

### Point I—Denial of Hanson's Motion for New Trial

Hanson's first point relied on reads:

The trial court erred in overruling Plaintiff's Motion for New Trial because the jury's verdict is not supported by the evidence, is contrary to the undisputed facts from the trial and was the product of prejudicial misconduct by the defendants, in that, a new trial was the only appropriate remedy when:

a. Defendant admitted striking Plaintiff Gregory L. Hanson, and the undisputed slapping and grabbing Plaintiff's genitals would be presumed an offensive touching, and no reasonable juror could conclude that the Plaintiff was not a victim of a battery, and

b. Defense counsel continually violated an Order *in limine* and continued to make improper references to criminal convictions and drug use of witnesses, while questioning witness, and

c. Defense counsel made prejudicial statements during *voir dire* including telling the veniremen that eight of nine of plaintiff's claims had been dismissed, that plaintiff operated an "adult entertainment establishment" and implied plaintiff had been sued for assault and battery.

All of which caused undue and unlawful prejudice to Plaintiff.

Thus, Hanson claims that the trial court erred in denying his motion for new trial for three reasons: first, the jury's verdict "is not supported by the evidence," second, the jury's verdict "is contrary to the undisputed facts from the trial," and, third, the jury's verdict "was the product of prejudicial misconduct by the defendants." [3]

We quickly dispose of Hanson's first claim—the verdict is not supported by the evidence—because Hanson did not present this claim to the trial court in his motion for new trial. There, Hanson claimed that "the verdict was against the weight of the evidence." No where in his motion did Hanson contend that "the jury's verdict is not supported by the evidence." Thus, Hanson never presented this claim to the trial court. "Appellate courts are merely courts of review for trial court errors, and there can be no review of a matter which has not been presented to or expressly decided by the trial court." *Robbins v. Robbins,* 328 S.W.2d 552, 555 (Mo.1959).

Moreover, even if this claim had been presented to the trial court in Hanson's motion for new trial, it would not have afforded Hanson any relief. "Because the plaintiff has the burden of proof, a verdict in defendant's favor need not be supported by any evidence." *Warren v. Thompson,* 862 S.W.2d 513, 514 (Mo.App. 1993) (quoting *Bakelite Co. v. Miller,* 372 S.W.2d 867, 871–72 (Mo.1963)). "[T]he sufficiency of the evidence to support a defendant's verdict is not a question amenable to appellate review." *Id.*

---

**3.** We recognize that this point relied on fails to comply with Rule 84.04(d)(1), in that it combines three disparate claims of error in one point and is, therefore, multifarious. *Atkins v. McPhetridge,* 213 S.W.3d 116, 120 (Mo. App. S.D.2006). However, because the first two asserted claims are not amenable to appellate review, *see* discussion *supra,* we are only called upon to review a single claim of error. References to rules are to Missouri Court Rules (2004), unless otherwise indicated.

Hanson's second claim under Point I challenges the trial court's denial of his motion for new trial on the basis that the verdict is contrary to the undisputed facts from the trial, in that defendant Wise admitted striking Hanson, "and the undisputed slapping and grabbing [Hanson's] genitals would be presumed an offensive touching, and no reasonable juror could conclude that [Hanson] was not a victim of a battery[.]" Hanson, in the argument portion of his brief, characterizes this claim as an assertion that the verdict is against the weight of the evidence. We agree with that characterization and observe that as such it preserves nothing for appellate review. Weighing evidence remains a trial court function. *Warren,* 862 S.W.2d at 514 (citing *Castle v. Modern Farm Equip. Co.,* 729 S.W.2d 650, 653 (Mo.App.1987)). "An appellate court cannot rule on the weight of the evidence in a jury-tried case." *Warren,* 862 S.W.2d at 514 (quoting *George v. Eaton,* 789 S.W.2d 56, 61 (Mo.App.1990)). The trial court's denial of a motion for new trial challenging the verdict as against the weight of the evidence is a conclusive determination that cannot be overturned on appeal. *Warren,* 862 S.W.2d at 514.

Hanson's third claim of error in the trial court's denial of his motion for a new trial asserts that a new trial was warranted for the reason that the jury's verdict was the product of prejudicial misconduct by the Defendants. The first prong of this claim is that "defense counsel continually violated an Order *in limine* and continued to make improper references to criminal convictions and drug use of witnesses, while questioning witnesses[.]"[4] Hanson contends that "numerous attempts to interject this highly prejudicial information ultimately resulted in the jury having the belief that at least one witness if not multiple witnesses were drug users and guilty of prior bad acts."

"The trial court has broad discretion in deciding whether to grant a new trial." *Blue v. Harrah's North Kansas City, L.L.C.,* 170 S.W.3d 466, 474 (Mo.App. 2005). "We review the trial court's denial of a motion for new trial for abuse of discretion." *Warren Davis Properties V, L.L.C. v. United Fire & Cas. Co.,* 111 S.W.3d 515, 520 (Mo.App.2003).

Apparently before trial, Hanson sought an order *in limine* "to prohibit the defendants from introducing any evidence ... which attempts to use specific instances of conduct of bad or wrongful acts to impeach any witness[,]" specifically "evidence of cursing, prior sex acts, and drug use[.]" By docket entry, the trial court sustained his motion, except for the use of cursing during and near the occurrences in the pleadings. The trial court indicated in its entry that it may reconsider its ruling at trial. On the second day of trial, the trial court reminded the parties that the defense could not inquire about "people's use of drugs and alcohol ... unless it has something to do with what was going on at the time" of the incidents alleged, as any evidence that the witness was under the influence of a drug or alcohol at the time of the incident "goes directly to their ability to recall[.]"

Defendants' counsels violated the trial court's directive on multiple occasions. The first instance occurred when counsel for Friendly Ford asked one of the witnesses called by Hanson, "And do you remember when I gave your deposition and you testified that you had information

4. Appellant has failed to direct this Court to the location in the record where his motion for an order *in limine* may be found, and neither has he provided any citation to the record where a docket entry or order sustaining his motion may be found.

about their drug use at the dealership?" The witness answered without objection from Hanson. Later, when counsel for Wise was cross-examining another witness, he asked, "Were you ever under the influence of a narcotic while you were in the workplace?" Hanson objected immediately, and the witness did not answer. The trial court reiterated its prior ruling on the matter. Only minutes later, counsel asked the same witness, "When's the last time you were under the influence of a narcotic like cocaine?" Hanson again objected and moved for a mistrial. The trial court sustained Hanson's objection, overruled his motion for a mistrial, and instructed the jury to disregard the question. The very next question counsel posed to the same witness was, "[D]uring the time that you perceived that at Friendly Ford there was inappropriate behavior, did you perceive that some of the fellows there might have been drinking alcohol, maybe during work hours?" Hanson objected, however, this time he did not ask for a mistrial, stating that he believed counsel's violation was an intentional attempt on the part of the defendants to obtain a mistrial. Rather, he requested "an admonishment in front of the jury and a sanction in front of the jury." The parties approached, and out of the hearing of the jury, the trial court again restated his ruling on the matter. Later, during cross-examination of Hanson, counsel for Friendly Ford asked Hanson whether he disclosed to the co-owner who was considering promoting a co-worker that the person had a crack cocaine habit. Hanson answered he did not know the man had such a habit, and counsel for Hanson objected.

When the parties approached the bench, the trial court stated, among other admonishments, that such questioning was "a blatant violation of my prior ruling" and it would instruct the jury to disregard the last question. Hanson's counsel then stat-

ed, "I think it requires more because of the number of attempts to get this into evidence." Further discussion ensued, and Hanson's counsel requested "some sanction against counsel in front of the jury to let them plainly know that question is improper and instruct [counsel], you will not ask a question like that again." The trial court then stated, "Okay. My statement's going to be that the last question was an improper question and that the jury should disregard it." The trial court warned Friendly Ford's counsel that another violation would result in a heavy fine and sanctions, and the jury was instructed "to disregard the entire question."

On appeal, Hanson asserts that the prejudicial comments related to drug use "caused a .bias[ed] and prejudicial jury." Hanson assigns no error to the trial court's denial of his initial request for a mistrial or any other relief requested and not granted on the issue of prejudicial misconduct of opposing counsel.

■ "[I]n our review of a judgment that is claimed to be the result of bias and prejudice, we recognize that the trial court has had an opportunity to observe and take appropriate action in regard to the effect. of the alleged prejudicial occurrences." *Wright v. Long,* 954 S.W.2d 470, 472 (Mo.App.1997). Injecting the issue of drug use was in direct conflict with the trial court's ruling on the motion in limine and subsequent rulings upon Hanson's objections to. the questioning. Contrary to Defendants' argument on this point, that they "had to present such evidence in order to preserve the issue for an appeal[,]" counsel's conduct was improper. *See Brown v. Bailey,* 210 S.W.3d 397, 411[34] (Mo.App.2006).

■ However, Hanson waived any claim of error related to the trial court's rulings by stating that he was not going to

request a mistrial for the reason that be believed that was what the defendants wanted. *See Glasgow v. Cole,* 168 S.W.3d 511, 515 (Mo.App.2005) (by declining a mistrial, plaintiff "implicitly decided that the comment was not so injurious as to require drastic action and waived any possible prejudicial effect.") Further, "[f]ailure to make a timely request for further relief when an objection has been sustained may be deemed a waiver or abandonment of further remedial relief." *McMillin v. Union Elec. Co.,* 820 S.W.2d 352, 355 (Mo.App.1991). "A party cannot object to the admission of certain evidence or argument, purposely delay making a request for further relief and then use the evidence to its advantage." *Id.* "Nor can a party wait to evaluate the impact of the evidence on the jury or delay for any other strategic reason, without giving a clear intention to waive or abandon the request." *Id.*

■ "The trial court is in a better position to assess the prejudicial effect of improper evidence on the jury and to evaluate whether any resulting prejudice can be cured by less drastic means that granting a mistrial." *Brown,* 210 S.W.3d at 411. "[O]nly if the trial court's decision was clearly against reason and resulted in prejudice will we find that the trial court abused it discretion." *In re Care and Treatment of Burgess,* 147 S.W.3d 822, 833 (Mo.App.2004). Here, the trial court sustained Hanson's objection to the questions and instructed the jury to disregard the same. We presume the jury followed those instructions. *Brown,* 210 S.W.3d at 412. In so doing, we believe that the trial court effectively determined that any prejudice could be cured in this manner, and we find no abuse of discretion.

■ The second prong of Hanson's claim of prejudicial misconduct by Defendants relates to the form of three statements made by defense counsel on *voir dire* and one in closing argument. However, the claims regarding three of the four instances were not raised in Hanson's motion for new trial and are not preserved for appellate review on appeal. *See Grover v. Grover,* 972 S.W.2d 568, 571 (Mo.App. 1998). Therefore, we only consider the one that was properly preserved for appellate review.

■ During *voir dire,* counsel for defendant Wise advised the jury that eight of nine of Hanson's claims against defendant Wise had been dismissed. Hanson objected and requested "that further questioning regarding this not be allowed." He further asked for "an instruction to the jury indicating they should disregard that question and the dismissal has no bearing on the case currently before this Court." After a discussion outside the hearing of the venire panel, the trial court instructed the panel to disregard the question.

■ On appeal, Hanson contends that "[t]he question was solely posed to cause the jury to believe that plaintiff makes frivolous claims[,]" and that such an "inference was severely prejudicial and calculated to bias the jury." During *voir dire* examinations, trial courts are afforded broad discretion, and we will reverse a trial court's ruling only when it clearly and manifestly indicates an abuse of that discretion. *State ex rel. Mo. Hwy. & Transp. Comm'n v. Buys,* 909 S.W.2d 735, 737 (Mo. App.1995). "Great deference is given to a trial court's denial of a motion for a new trial, particularly when the alleged basis for a new trial concerns comments by opposing counsel." *Burrows v. Union Pacific Ry. Co.,* 218 S.W.3d 527, 534 (Mo.App. 2007). "Improper comments made to a jury may be cured, in given circumstances, by withdrawal, reprimand, or admonition, or by an instruction to the jury." *Stucker*

*v. Rose,* 949 S.W.2d 235, 238 (Mo.App. 1997). Hanson requested no further relief beyond asking the trial court to inform the jury that the dismissal of those claims had no bearing on the case before the court, and he does not challenge the trial court's failure to do so.

From the above and foregoing, this court finds no abuse of the trial court's discretion in denying Hanson's motion for new trial. Point I is denied.

### Point II—Denial of Hanson's Motion to Amend Petition

Hanson's second point claims the trial court erred in not granting him leave to amend the prayer of his petition at the close of his case, as provided under Rule 55.33(b), to assert a claim for offensive touching, "in that the jury was not permitted to consider Wise's behavior as 'offensive' thereby constituting a battery." Hanson contends that he pleaded "the specific acts of offensive touching"—"the striking and grabbing of genitals and buttocks." Hanson alleges, however, that the trial court's denial of his request to amend the prayer of his petition prejudiced him "when he sought to introduce a jury instruction for battery which included offensive touching."

At the close of Hanson's evidence, Hanson sought to amend his second amended petition, filed May 4, 2004—six days prior to trial. We set forth that portion of the transcript:

> [Hanson's counsel]: [Hanson] would move to amend their [sic] petition to conform to the evidence introduced at this trial.
>
> THE COURT: That's too general of a motion.
>
> [Hanson's counsel]: I'm not sure there's a specific allegation of poking, there's certainly—we move to amend our petition to include the word poking.

> We move to claim damages for humiliation, suffering, degrading, embarrassment. The general allegation was emotional stress, but clearly the testimony has been that the touching was offensive, was unconsensual and we merely move to amend our petition to establish that the conduct was offensive touching and nonconsensual, and caused humiliation, embarrassment and anger.
>
> THE COURT: Response from Defendant?
>
> . . . .
>
> [Defendant's counsel]: Your Honor, we object to the motion to conform to the evidence. It is outside the pleadings and certainly while there was evidence of poking, this was evidence at the time it was offered was offered of similar evidence of bad acts. And this is the exact same dilemma that the Court has put us in with regard to its rulings.
>
> Now the evidence, which was first characterized as similar bad acts, is now at the bottom of the ninth with two strikes out, is now evidence of damages. And that's precisely the thing that we didn't want to get whip sawed in in this case. We substantially are prejudiced by that because it's now being turned against us—
>
> THE COURT: Well, I don't—go ahead, I'll let you finish.
>
> [Defendants' counsel]: It's being substantially turned against us to be a claim in and of itself.
>
> THE COURT: I'm trying to figure out what's new because in Paragraph 21, we have snapping of comb, snapping the arms with a comb, slapping the back of their head, and poking the finger in the chest. What do we have that we didn't have already?

[Appellant's counsel]: Well, that's the only thing I'm thinking of. That's all we have. I don't—

THE COURT: What are you trying to add, Mr. Bodine? I don't get it. You have the same thing. You asked for mental anguish.

[Hanson's counsel]: I don't think I specifically pled poking in the chest. He did testify that he was poked in the chest.

THE COURT: It says poking his finger in their chest.

. . . .

[Hanson's counsel]: Okay. I pled better than I thought. But I think the prayer needs to be amended to include a claim not only for bodily harm for physically touching, but also offensive conduct.

Again, the conduct per se, I would say, of touching another man's genitals is offensive conduct. I think—it certainly was outrageous conduct, but I'm going to allege and ask to amend the petition to specifically assert that it is an offensive contact, and that as an offensive contact there is also evidence and damages of humiliation specifically, embarrassment, anger, and that's the only—I don't want to be limited in the jury instructions to physical harm. I want to clearly have an offensive touching case as well.

. . . .

[Defendants' counsel]: My concern, I brought it up in voir dire, and is that his first amended petition separated Count 2, the assault and battery, and Count 3, the sexual battery, and when they were separated in Count 2 it was very clear that the assault and battery was solely based upon physical harm. That's all he had pled. That's all that was discussed in depositions.

Now with regard to the . . . sexual battery, he again did in fact cause bodily harm and emotional distress. He doesn't talk at all about offensive touching.

And if you look in the case law there's a different type of battery between offensive touching and battery causing physical harm. He's only pled the battery for physical harm.

So to allow him to amend it at this time, which we brought it up to the Court's attention at the beginning of the trial, and we objected to that, and we were not trying that by consent, I think at the end of Plaintiff's case to allow him to amend would be great prejudice to both Defendants.

THE COURT: I'm going to sustain that objection. You can still—I mean you pled this as intentional battery.

[Hanson's counsel]: Well—and I think I may have already pled it. I'm looking more at my petition. I'm looking at paragraph 24—

THE COURT: In 27 you brought in slapping at the genitals and the buttocks.

[Hanson's counsel]: And then it was intent . . . to cause emotional distress. I think that's offensive conduct.

[Defendant Friendly Ford's counsel]: Only as to the sexual things. We need to separate that out to the jury.

THE COURT: True. You know, I think it's already pled where it puts everybody on pretty good notice of what's being alleged.

[Hanson's counsel]: Is my motion to amend to conform to the evidence then sustained or overruled?

THE COURT: It's overruled because I don't think there's any need to amend it. I'm going to leave the pleading as it is and we'll go from there.

We note that Hanson's initial request to amend was ruled "too general of a motion." Hanson does not challenge this ruling. Next, Hanson moved to amend his petition "to include the word poking." Having determined that he had already alleged "poking," Hanson next requested to amend his prayer "to include a claim not only for bodily harm for physically touching, but also offensive conduct." The trial court overruled his request, finding that "it's already pled where it puts everybody on pretty good notice of what's being alleged."

"Rule 55.33(b) permits the amendment of pleadings to conform to the evidence presented when issues not raised in the pleadings are tried by the express or implied consent of the parties."[5] *Heritage Roofing, L.L.C. v. Fischer*, 164 S.W.3d 128, 132 (Mo.App.2005). Factors that the trial court considers in its determination include:

> (1) hardship to the moving party if leave is not granted; (2) reasons for failure to include any new matter in earlier pleadings; (3) timeliness of the application; (4) whether an amendment could cure any inadequacy of the moving party's pleading; and (5) injustice resulting to the party opposing the motion, should it be granted.

*Sheehan v. Northwestern Mut. Life Ins. Co.*, 44 S.W.3d 389, 394 (Mo.App.2000). Whether to allow amendment of pleadings is "a matter primarily within the sound discretion of the trial judge whose ruling will not be disturbed absent obvious abuse of that discretion." *Cremer v. Hollymatic Corp.*, 12 S.W.3d 363, 369 (Mo.App.2000). "The burden is on the proponent to demonstrate that the trial court clearly and palpably abused its discretion." *Kanefield v. SP Distributing Co., L.L.C.*, 25 S.W.3d 492, 498 (Mo.App. 2000).

Hanson fails to carry his burden on the first factor. We find no hardship to Hanson in the trial court's denial of his motion to amend his prayer for relief. While Hanson asserts that he "sought to introduce a jury instruction for battery which included offensive touching[,]" he fails to cite us to any location in the record supporting such assertion, and we have failed to locate any such attempt on our own. Generally, a party cannot complain or assign error to the failure to give an instruction where a proposed instruction on the matter was not timely tendered and requested. *Joiner v. Auto–Owners Mut. Ins. Co.*, 891 S.W.2d 479, 482 (Mo.App. 1994). In the absence of demonstrable hardship we can not find any abuse of discretion in the trial court's denial of Appellant's motion. Point denied.

### Point III—Allowing Wise to Call Ames as a Witness

Next, Hanson claims that the trial court erred when it permitted defendant Wise to call co-plaintiff Chris Ames to testify. Hanson asserts that Wise called Ames to testify solely to elicit Ames' admission of prior criminal convictions. Hanson reasons that the trial court erred in allowing Wise to call Ames as a witness in that Wise could not elicit such information because "a party cannot impeach their [sic] own witness unless they [sic] are sur-

---

**5.** While neither party argues otherwise, we question whether the evidence referred to by Hanson in support of his motion to amend his petition pursuant to Rule 55.33(b) was presented on "issues not raised in the pleadings," so as to bring his motion within the purview of Rule 55.33(b) in the first instance. *See Heritage Roofing, L.L.C. v. Fischer*, 164 S.W.3d 128, 132 (Mo.App.2005). However, in the absence of any prejudice to Hanson, in any event, as discussed *supra*, we need not reach or address this issue.

prised by their [sic] testimony[.]" Hanson claims he was prejudiced by this error in that, "allowing defendant Wise to call a co-plaintiff to the stand solely to establish his criminal past will have an undue and unlawful prejudice to Plaintiff."

Defendants counter this claim by asserting: "Defendants called Chris Ames to establish that he was a co-Plaintiff, that he was hired by Greg Hanson, that he was beholden to Greg Hanson, and that Greg Hanson was the architect of this lawsuit, recruiting Ames and the other co-Plaintiffs." Hanson replies to this assertion by stating: "Respondent's argument clearly belies his true intent. Prejudice [sic] Appellant Hanson by establishing he comports [sic] with convicted criminals. Respondent's argument is without merit."

 Hanson failed to preserve this claim of error for appellate review. Hanson interposed no objection to the trial court when Wise called Ames as a witness to testify. "To preserve for appellate review an error regarding the admission of evidence, a timely objection must be made when the evidence is introduced at trial. If the objection is not made at the time of the incident giving rise to the objection, the objection may be deemed waived or abandoned." *R & J Rhodes, L.L.C. v. Finney*, 231 S.W.3d 183, 190 (Mo.App. 2007) (quoting *Letz v. Turbomeca Engine Corp.*, 975 S.W.2d 155, 168 (Mo.App.1997) (internal citations omitted)). Even if he had timely objected, Hanson failed to allege in his motion for new trial any purported trial court error in permitting Wise to call Ames to testify. Rule 78.07(a); *Davolt v. Highland*, 119 S.W.3d 118, 131 (Mo.App.2003). Having preserved nothing for our review, Hanson's third point is denied.

### Point IV—Allowing Wise to Call Acton as a "Rebuttal" Witness

 Hanson's fourth point is set forth below:

The trial court errored [sic] in permitting Wise to call Mike Acton as a "rebuttal" witnesses [sic] when the "rebuttal testimony" was used "rebut". [sic] Plaintiff's testimony brought out by Defendant Wise during Defendant Wise's case in chief because [sic] the testimony solely sought to introduce a specific claim that Hanson had struck another person in the genitals, in that, a specific instance of prior conduct by Hanson constitutes as [sic] a prior bad act as witnessed and alleged by a "rebuttal" witness is improper impeachment, and constituted prejudicial error to the Plaintiff.

We find no testimony from a Mike Acton in the record. In the argument portion under this point, Hanson refers to rebuttal testimony from "Mike Arnold," who was called to testify by defendant Wise after Hanson had testified that he had never "reach[ed] at the genitals of another male employee" or struck another male employee in his genitals.[6] Hanson objected to calling the witness, "primarily on the basis he's not on the witness list." The trial court overruled Hanson's objection and Arnold took the stand. It was established that Arnold had been employed in the new truck sales department at Friendly Ford at some point in 2000, and Hanson was Arnold's boss. When Arnold was asked whether Hanson ever attempted or strike or did actually strike Arnold in the genitals, Arnold responded that he had, explaining that such conduct was commonplace in the car business and was referred to as "taking a bow." Other than his

6. Arnold was mistakenly called prior to Hanson, however, Arnold was not named on the witness list, and he was dismissed. Following Hanson's testimony, Arnold was recalled by Defendant Wise.

initial objection that Arnold was not on the witness list, Hanson raised no further objection to Arnold's testimony.

As best we can decipher Hanson's point,[7] he is not now contending, as he did in the trial court, that the trial court erred in allowing Arnold to testify because he was not on the witness list. Rather, he is now contending on appeal that the trial court erred in allowing Arnold to testify because his testimony related to a "prior bad act" of Hanson, which constituted "improper impeachment" of Hanson's testimony. This claim has not been preserved for appellate review because it was not presented to the trial court. "To preserve evidentiary questions for appeal, there must be an objection giving the grounds at the time the evidence is sought to be introduced, and the same objection must be set out in the motion for new trial then carried forward in the appeal brief." *Day Advertising Inc. v. Devries and Assoc., P.C.*, 217 S.W.3d 362, 366 (Mo.App.2007) (quoting *Enos v. Ryder Auto. Operations, Inc.*, 73 S.W.3d 784, 788–789 (Mo.App.2002) (internal citations omitted)). The failure to object at the trial on the same basis as that asserted on appeal fails to preserve that issue for appellate review. *Miller v. SSM Health Care Corp.*, 193 S.W.3d 416, 422 (Mo.App.2006). Hanson's Point IV is denied.

### Point V—No Plain Error Review for Cumulative Error

Hanson's fifth and final point requests plain error review for his claim that the trial court erred in failing to grant a new trial on the basis that "defendants' cumulative conduct had [the] effect of introducing irrelevant, nonproductive, highly prejudicial comments throughout the trial[,]"

without which "a verdict based solely on the evidence would have been given by the jury." Hanson argues that he was prejudiced by the "admission of prejudicial material, together with the defendants' incessant attempts to introduce evidence which had been barred by an order in limine."

Rule 84.13(c) provides for review of plain error in civil cases. "Plain error is evident, obvious and clear error." *Collins v. Hertenstein*, 90 S.W.3d 87, 98 (Mo.App.2002). Granted only rarely in civil cases, plain error affecting substantial rights may be reviewed on appeal where such error resulted in manifest injustice or a miscarriage of justice. *English v. Empire Dist. Elec. Co., Inc.*, 220 S.W.3d 849, 854 (Mo.App.2007). Review is discretionary, and if the claim is not established after an examination of the matter on its face, we may decline to exercise our discretion. *Id.*

Although a new trial may be granted due to cumulative effects of trial court errors even absent a decision that any single error would constitute grounds for reversal and a new trial, such relief will not be granted where, as here, "there is no showing that prejudice resulted from any rulings of the trial court." *Smith v. Wal–Mart Stores, Inc.*, 967 S.W.2d 198, 205 (Mo.App.1998). On this basis, we decline to exercise our discretion to review for plain error. Point V is denied.

### Friendly Ford and Wise Appeals— Nos. 28187 and 28189

Defendants Friendly Ford and Wise cross-appealed, presenting one common point relied on, asserting that the trial court erred in denying their motion to

---

**7.** No analysis is undertaken as to whether this point complies with the requirements of Rule 84.04(d)(1).

amend the judgment to order Appellant to pay their costs and attorney's fees. Defendants assert that they are the prevailing parties under Section 213.111.2, the Missouri Human Rights Act (MHRA), and are entitled to an award of attorney fees upon a showing that the action brought lacks foundation. Defendants contend that Hanson's claims were frivolous and without foundation because plaintiff knowingly failed to exhaust available administrative remedies under the MHRA, and further, Hanson improperly filed his claim in the Circuit Court of St. Louis City, forcing Defendants to defend in a distant forum, further increasing their costs, and later refiled claims which had previously been dismissed, requiring Defendants to file another motion to dismiss.

We are unable to review this point because of Defendants' failure to comply with Rule 84.04(i), which provides: "All statements of fact and argument shall have specific page references to the legal file or the transcript." The legal file in this case consists of more than 320 pages, and the docket sheet reveals a very complicated, convoluted and lengthy procedural history. Yet, Defendants' citations to the legal file contained in the argument of their brief purportedly supporting their contentions regarding the procedural history of the case and why the trial court erred in not awarding them attorney fees do not correspond to the actual documents contained in the legal file and, because of this disconnect, offer no support for their arguments.

For instance, Defendants claim they timely filed a Joint Motion to Amend the Judgment on the Claims of Plaintiff Hanson to seek attorney fees and cited pages 272–285 of the legal file in support. However, pages 272–282 of the legal file are pages 3–13 of the "Memorandum and Suggestions in Support of Defendants' Joint Response to Motion for New Trial," and

pages 283–285 of the legal file is the "Judgment Entry" with the jury verdict attached as an exhibit. Defendants next cite in their brief to pages 284–285 of the legal file as being an affidavit supporting their specific charges for attorneys fees, yet, as previously indicated, these pages are the "Judgment Entry" with jury verdict attached. Defendants' third citation to the legal file in the argument portion of their brief is to pages 64–67 as support for their factual assertion that: "The United States District Court for the Eastern District of Missouri, Eastern Division, explicitly ruled that the [sic] Hanson's claims were brought under the MHRA." Yet, page 64 of the legal file is a "Certificate of Service" to a "Notice of Motion," and pages 65–67 are "Defendants Friendly Ford, Inc. and Jay Wise's Joint Motion to Dismiss." While we have detailed only the first three instances, we were unable to find any citation to the record by the Defendants in the argument portion of their brief which supported any of their arguments.

Compliance with Rule 84.04(i) is "mandatory and essential for the effective functioning of appellate courts." *Bishop v. Metro Restoration Servs., Inc.,* 209 S.W.3d 43, 46 (Mo.App.2006). If the court were to take the time on its own initiative to comb the record for support of factual assertions in a brief, we would, in effect, become an advocate for the non-complying party. *Id.* This is especially true in the context of this case where the procedural history spans more than six years and includes actions taken in at least three different courts within the Missouri and federal court systems.

Defendants' failure to accurately reference the legal file in support of their argument has impeded our ability to consider and determine their claim of trial court

error. As such, their point must be and is dismissed.

### Decision

The trial court's judgment is affirmed.

BARNEY, P.J., and RAHMEYER, J., concur.