

# Missouri Court of Appeals
## Southern District

### In Division

IN THE INTEREST OF:                    )
Y.B. and Y.M., minor children under    )
seventeen years of age.                )
                                       )
GREENE COUNTY JUVENILE OFFICE,         )
                                       )
    Petitioner-Respondent,          )
                                       )
v.                                     )    No. SD37863, SD37864
                                       )    Filed: **June 6, 2023**
C.V.B.,                                )
                                       )
    Respondent-Appellant.           )

APPEAL FROM THE CIRCUIT COURT OF GREENE COUNTY

Honorable Richard Zerr, Senior Judge

**<u>AFFIRMED</u>**

C.V.B. ("Mother") appeals separate judgments terminating her parental rights to her children, Y.B. and Y.M. (collectively, the "Children"). The appeals were consolidated for our review. In her only point on appeal, Mother alleges the trial court erred in failing to provide her a qualified interpreter under Sections 476.753.1(1) and 476.750(5) for the second day of the two-day parental rights termination hearing where she did not execute a written waiver of the right to

a qualified interpreter under Section 476.760.3.[1]  Mother did not preserve this issue for review, and we decline plain error review because Mother has not met her burden of establishing manifest injustice or miscarriage of justice from the claimed error.  We affirm the judgments of the trial court.

**Factual Background and Procedural History**

Mother does not challenge the grounds for termination found by the trial court or that termination of her parental rights is in the Children's best interest.  Therefore, we do not recite the evidence supporting those findings.

The Juvenile Office filed petitions to terminate Mother's parental rights to the Children on March 4, 2021.  In May 2021, Mother filed Motions for Children's Division to Pay Interpreter Fees, requesting the Children's Division be required to pay for interpreters for up to 30 hours outside of court hearings.  The trial court granted the motions for up to 10 hours of interpreter fees outside of court hearings.

The trial court conducted the hearing on the termination petitions on October 17 and 19, 2022.  On October 17, Mother appeared in person and with counsel and with Mother's duly appointed guardian ad litem ("GAL").  Loretta Crews ("Crews") and Tara Mavis ("Mavis"), two court-authorized American Sign Language ("ASL") interpreters appeared and confirmed they had interpreted for Mother previously, they believed they could maintain and have a clear interpreting relationship with Mother, that they had never had a problem with Mother lacking an understanding of sign language, that they would ask the trial court to stop if they at any point believed Mother was not clearly understanding what was being said, and that they would ask for

---

[1] All statutory references are to RSMo Cum. Supp. 2020.  All rule references are to Missouri Court Rules (2022). Mother cites Section 470.760 in her Point Relied On, but no such Section exists.  We assume Mother intended to reference Section 476.750-766, as she does so throughout her brief.

more time if they believed Mother needed more time to understand the proceedings. After this exchange, the trial court swore in both interpreters. Mother's counsel verbally asked for a continuance of the hearing, which the trial court denied. Mother's verbal request for continuance did not relate to the adequacy of the auxiliary aids and services provided to her but was instead based on (1) her desire to hire private counsel, (2) her desire for more time to attempt reunification with the Children, and (3) because she had requested a different interpreter for visits with the Children because she believed the interpreter was interfering with her bonding with the Children.

On October 19, Mother appeared by Webex through audio only with no record explanation of why Mother did not or could not use the video function of Webex. Mother again appeared with counsel and with Mother's GAL. Crews and Mavis also appeared. In addition, two other interpreters appeared to help Mother with the Video Relay Service ("VRS") interpreting system. As to these two interpreters, the trial court noted they "are not certified court interpreters, but they are regularly engaged in the business and activity of interpretation." Mother's counsel renewed her verbal request for a continuance of the hearing date, which the trial court again denied. As to Mother's failure to appear in person on October 19, the trial court discussed the matter extensively on the record, concluding:

> [W]e are using an interpreter who is not court certified, we're using that interpreter because of [M]other's decision to not appear in person today. And I recognize she has a -- a distance issue, where she's traveled some distance on Monday and indicated she's gotten difficulty traveling that distance today. But, nonetheless, she has, I believe, an obligation to be present in person if she wants to participate in that fashion. And her decision to not appear in person today and to appear through the use of a non-certified interpreter of her choosing, I believe should not prohibit us from proceeding today in moving this case on towards resolution.
>
> . . . .

So with that understanding, once again, as -- as untidy as it might be, I believe that [M]other has waived her right to be physically present and does so knowingly; I believe that she has asked the Court to allow her appearance today virtually by the use of a non-certified court reporter -- a non-certified interpreter, excuse me. While there is certainly infirmity, and that's not the preferred process, I do believe that she's requested that, and I don't believe that anyone is -- is -- other than perhaps herself, harmed by that decision. And rather than further exposing the -- the [C]hildren in this case to prolonged time in a custodial setting away from permanency, I believe that the better practice for me would be to go ahead and proceed with the matter today, and I'm going to so do.

At no point did Mother's counsel object that Mother had not been provided with requested auxiliary aids or services. Likewise, at no point did Mother's counsel raise whether Mother should have to waive in writing her right to receive the help of a qualified interpreter. Instead, Mother's counsel testified:

> THE COURT: Okay. Now while we were off the record, I think you were able to speak with [Mother] via the interpreter that she has selected to use today; is that right?
> [Mother's Counsel]: Correct.
> THE COURT: Does [Mother] intend to testify today?
> [Mother's Counsel]: She does not.
> THE COURT: And you made it clear to [Mother] that she's got the right to testify today?
> [Mother's Counsel]: I did, Your Honor.
> THE COURT: Did you make it clear to [Mother] that she has the right to be present today in person to hear the report of the [GAL] and to ask any questions of the [GAL]?
> [Mother's Counsel]: I did, Your Honor.
> THE COURT: Do you believe that [Mother] understands the communication you've had with her about her rights?
> [Mother's Counsel]: I do.
> THE COURT: Did you also discuss with [Mother] the possibility of her presenting any other witnesses on her behalf?
> [Mother's Counsel]: I did.
> THE COURT: Did [Mother] indicate to you that she wishes to present any other evidence, any other evidence in this case?
> [Mother's Counsel]: She did not.
> THE COURT: Do you believe that [Mother] understands that by using the non-certified interpreter which she has selected to use today, that she does so at her own peril?
> [Mother's Counsel]: Yes, Your Honor.

As to Mother's failure to appear in person on October 19, Mother's GAL testified:

THE COURT: Would you like to weigh in on the issue of [Mother's] appearance today and non-appearance and her testifying or not testifying?

[Mother's GAL]: Your Honor, I do believe that [Mother] has the competency to understand that she was served --

INTERPRETER 6143: And this -- Your Honor, I apologize. This is Interpreter 6143. The -- if it's the GAL that's speaking, the microphone is very far away, and I want to be able to make sure that the interpretation is able to be heard.

THE COURT: Okay, thank -- thank you for that.

[Mother's GAL]: Is this better? Can you hear me?

INTERPRETER 6143: Yes, ma'am. And currently we're going to be doing a switch with another interpreter. That interpreter's ID is 6926. Here is -- one moment, please.

THE COURT: Okay.

INTERPRETER 6926: All right. This is Interpreter 6926. We can continue with this conversation.

[Mother's GAL]: Thank you.

THE COURT: Go ahead.

[Mother's GAL]: I have been appointed to this case since March 13, 2020. I have met with [Mother] both in person with an interpreter, as well as spoken to her by phone and through her friend . . . on numerous occasions. I do believe that [Mother] has the competency to understand that she was served with court papers regarding the termination of parental rights trial that has been scheduled on this date. I do believe that [Mother] has the capacity to understand that she was to participate. [Mother] did participate on Monday. We did discuss on Monday that we were going to reappear here today at 9:00 a.m. I do believe that [Mother] chose of her own volition to appear by Webex through the VRS interpreter. So I do believe that [Mother] has the capacity to understand the requirements of her to participate in this case and that she did willingly and knowingly choose not to appear. [Mother] has, on numerous occasions, made choices whether or not to appear in person or to appear virtually, and I would be comfortable moving forward using the VRS interpreters, as per [M]other's choice to appear by Webex.

The trial court held the hearing on October 19. Neither Mother nor Father presented evidence. Mother's GAL and the Children's GAL presented their recommendations and the trial court heard argument of counsel before taking the matter under advisement. On November 8, 2022, the trial court entered its judgment in each case terminating Mother's parental rights. The trial court included in each judgment the following language concerning auxiliary aids and services provided to Mother.

5

[Mother] suffers from profound hearing loss but appears to be able to effectively use [ASL] or other signs.[2] Prior to the hearing the Court determined the ability of the certified ASL interpreters to communicate effectively with [Mother]. The interpreters were sworn by the court prior to hearing. [Mother] chose not to appear in person for day two of the hearing. Mother chose to appear via Web[e]x and appeared by voice only. Mother was aided by a relay interpreter who was not certified. After discussion the Court proceeded with the hearing after considering that there would be no testimony presented and the use of the non-certified interpreter was at [Mother's] discretion.

Mother moved for a new trial in each case. The motions alleged only generally that the judgments are not supported by substantial evidence, are against the weight of the evidence, and contain erroneous declarations and/or applications of the law. The trial court denied the motions. Mother appealed.

## Standard of Review

Mother argues she preserved her claim for review because "it is evident that the issue of the lack of a qualified interpreter was presented to the trial court and the trial court acted with intentionality to create a record concerning the issue at the start of the second day of trial." We disagree that Mother preserved her claim for review. Mother's counsel never objected to the lack of a qualified interpreter at the October 19 hearing, never objected to the auxiliary aids and services or lack thereof provided to Mother at the October 19 hearing, and never objected that the October 19 hearing could not proceed absent Mother signing a written waiver. Instead, both Mother's counsel and Mother's GAL represented to the trial court that the hearing should move forward despite Mother's voluntary lack of in-person attendance. Further, Mother did not raise the claim she now advances in her motion for new trial. Under these circumstances, Mother has preserved nothing for review. "A party is not 'entitled on appeal to claim error on the part of the trial court when the party did not call attention to the error at trial and did not give the court the

---

[2] The language "or other signs" appears in the judgment as to Y.B. but not in the judgment as to Y.M.

6

opportunity to rule on the question.'" *Matter of Stiles*, 662 S.W.3d 322, 328 (Mo.App. 2023) (quoting *Brown v. Brown*, 423 S.W.3d 784, 787 (Mo. banc 2014)); *see also* Rule 78.09. "The failure to object at the trial on the same basis as that asserted on appeal fails to preserve that issue for appellate review." *Thomas v. Harley-Davidson Motor Co. Grp., LLC*, 571 S.W.3d 126, 135 (Mo.App. 2019) (quoting *Woods v. Friendly Ford, Inc.*, 248 S.W.3d 699, 712 (Mo.App. 2008)).

Under Rule 84.13(c), "[p]lain errors affecting substantial rights may be considered on appeal, in the discretion of the court, though not raised or preserved, when the court finds that manifest injustice or miscarriage of justice has resulted therefrom." "Plain error review, however, rarely is granted in civil cases." *In the Interest of J.C.S.*, 658 S.W.3d 260, 265 (Mo.App. 2023) (quoting *Mayes v. Saint Luke's Hosp. of Kansas City*, 430 S.W.3d 260, 269 (Mo. banc 2014)); *see also Terpstra v. State*, 565 S.W.3d 229, 248 (Mo.App. 2019) ("Reversal for plain error in civil cases is rare and is only appropriate 'when the injustice of the error is so egregious as to weaken the very foundation of the process and seriously undermine confidence in the outcome of the case.'") (quoting *Riggs v. State*, 473 S.W.3d 177, 186 (Mo.App. 2015)).

## Analysis

"[A]ll errors—whether statutory, constitutional, structural, or based in some other source—are subject to the same treatment under this Court's plain error framework." *State v. Brandolese*, 601 S.W.3d 519, 529 (Mo. banc 2020) (citing *State v. Howard*, 540 S.W.2d 86, 87-88 (Mo. banc 1976)). "Under plain error review, the [party seeking review] still bears the burden of establishing manifest injustice[.]" *Id.* at 530. Although *Brandolese* involved an allegation of plain error under Rule 30.20 in a criminal case, "Rules 30.20 and 84.13(c) 'are substantially similar such that cases construing one may be equally applicable to plain error review under the other.'" *State v. McAfee*, 462 S.W.3d 818, 822 n.2 (Mo.App. 2015) (quoting *Declue v. Dir. of*

*Revenue*, 361 S.W.3d 465, 467 n.4 (Mo.App. 2012)).  The relevant language is identical in Rules 30.20 and 84.13(c):  "[P]lain errors affecting substantial rights may be considered . . . in the discretion of the court . . . when the court finds that manifest injustice or miscarriage of justice has resulted therefrom."  The Supreme Court of Missouri's plain error review analysis in *Brandolese* applies with equal weight here to Mother's unpreserved claim in the termination of parental rights context.

Mother has not met her burden of establishing manifest injustice or miscarriage of justice.  In fact, Mother does not challenge the two grounds for termination found by the trial court or the finding that termination is in the Children's best interests.  Even had Mother attempted to allege or establish manifest injustice or miscarriage of justice, which she did not, it is clear no manifest injustice or miscarriage of justice occurred by the trial court failing to have Mother sign a written waiver under Section 476.760.3 because Mother did not waive any right to receive auxiliary aids and services under Section 476.760.3.  Section 476.753.1(1) provides:

> A designated responsible authority shall provide, based on a deaf person's expressed needs, auxiliary aids and services to interpret the proceedings to a deaf person and, if a deaf person gives testimony or other communication, to interpret the deaf person's testimony or other communication when:
>
> (1) A deaf person is a party, juror or witness at any stage of any judicial or quasi-judicial proceeding in this state or in its political subdivisions[.]

Section 476.750(1) defines "auxiliary aids and services" as "the device or service that the deaf person feels would best serve him or her which includes, but is not limited to, qualified interpreters[.]"  Section 476.750(5) defines "qualified interpreter" as "an interpreter certified and licensed by the Missouri interpreter certification system or deemed competent by the Missouri commission for the deaf and hard of hearing, who is able to interpret effectively, accurately and impartially both receptively and expressively, using any necessary specialized vocabulary."

8

And, as to when the right to auxiliary aids and services may be waived, Section 476.760.3 provides:

> No waiver of the right to auxiliary aids and services by a deaf person shall be valid unless that deaf person knowingly and voluntarily signs a written waiver. Such waiver is subject to the approval of counsel to the deaf person. If no counsel is used, then it is subject to the approval of the designated responsible authority. In no event is the failure of the deaf person to request a qualified interpreter and auxiliary aids and services provider deemed a waiver of that right.

Contrary to Mother's argument, the trial court did not fail to provide her with a qualified interpreter for day two of the hearing. Instead, the trial court provided Mother with two qualified interpreters for each day of the two-day hearing. Even assuming Mother could not use the services of the qualified interpreters on day two due to Mother's choice not to appear in-person and to instead rely on two non-certified interpreters to help her use the VRS interpreting system, the record shows Mother received from the trial court auxiliary aids and services based on Mother's expressed needs, as required by Section 476.753.1(1). Mother did not waive her right to receive auxiliary aids and services and appropriately did not sign a written waiver under Section 476.760.3.[3] *Brandolese* does not provide for plain error review when the party seeking review has not established manifest injustice or miscarriage of justice from the claimed error. Mother has not made the required showing, and we decline plain error review.[4] Point denied.

---

[3] Accepting Mother's argument would lead to the nonsensical result that Mother could bring the proceedings to a standstill by simply refusing to appear and then claiming she did not receive auxiliary aids or services to which she was entitled under Section 476.753.1.

[4] *See also* **Ampleman v. Dish Network Serv., LLC**, 467 S.W.3d 845, 848-49 (Mo.App. 2015) (no plain error in any failure to provide auxiliary aids and services to a deaf person under Section 476.753.1); **State v. Sinyard**, 294 S.W.3d 80, 81-82 (Mo.App. 2009) (no plain error in failure to provide a deaf interpreter under Section 476.753.1).

9

**Conclusion**

The judgments are affirmed.

GINGER K. GOOCH, J. – OPINION AUTHOR

DON E. BURRELL, J. – CONCURS

MARY W. SHEFFIELD, J. – CONCURS