**F.S. CROOK, INC.,**
**Plaintiff–Respondent,**

v.

**C & R HEATING AND SERVICE COM-**
**PANY, INC., Defendant–Appellant.**

**No. 56610.**

Missouri Court of Appeals,
Eastern District,
Division Two.

Feb. 27, 1990.

Motion for Rehearing and/or Transfer to Supreme Court Denied March 28, 1990.

Ziercher & Hocker, P.C., David R. Human, Clayton, for defendant-appellant.

Daniel H. LeGear, St. Louis, for plaintiff-respondent.

KAROHL, Judge.

The sole issue in this appeal is whether plaintiff F.S. Crook Inc. [Crook] proved the existence of a contract with defendant C & R Heating & Service Inc. [C & R]. In a court tried case C & R contended it never accepted the terms of payment contained in Crook's bid to sell and install a new burner for a boiler. Specifically, C & R claims the absence of any agreement on terms of payment of a bid price of $83,350. The trial court found for Crook on Count I alleging a cause of action for breach of contract. It awarded cancellation damages of $9,915 against C & R. The trial court found in favor of C & R on Count II which alleged an alternative claim in quantum meruit. Only C & R appealed. We reverse.

This appeal is governed by general principles of contract law. An offer must be accepted as tendered to result in a contract.

Negotiations, proposals and preliminary steps leading up to, but not becoming a part of the actual final agreement, do not constitute the contract. The proposition or propositions suggested by the one must be accepted as tendered; and if the acceptance omits, enlarges or modi-

fies the terms of the proposition made, then neither party is bound.

*Kalivas v. Hauck,* 365 Mo. 923, 290 S.W.2d 94, 101 (1956).

Where the purported acceptance of an offer introduces new or variant terms or omits, enlarges or modifies the terms of the offer, no contract has been formed and a response amounts to a counter offer and rejection of the original offer. *Koch–Laumand v. May Dept. Stores,* 623 S.W.2d 52, 55 (Mo.App.1981).

We review both the law and the evidence submitted to the trial court and must affirm the judgment unless there was no substantial evidence to support it. *Murphy v. Carron,* 536 S.W.2d 30, 32 (Mo. banc 1976). The trial court did not make findings of fact. We therefore assume all fact issues were found in accordance with the result reached. Rule 73.01(a)(2). We defer to the trial court on the question of credibility of all witnesses and the weight given to their testimony. Rule 73.01(c)(2); *Harris v. R. Webbe Corp.,* 669 S.W.2d 578, 579 (Mo.App.1984).

We firmly believe the judgment in favor of plaintiff, F.S. Crook Inc., is wrong because the evidence, considered in a light most favorable to Crook, is insufficient to support a finding that the parties entered into a contract.

Plaintiff alleged in its petition C & R accepted its bid proposal on or about July 30, 1987. On that day C & R sent a letter to Crook and four other bidders. The letter summarized the bids of each and concluded:

> After careful consideration, it was determined that F.S. Crook had the best package available and they have been awarded the contract.

None of the other bids included installation or a charge for installation. Crook's bid of $83,350 included a charge of $21,512 for installation. The letter of July 30, 1987 does not mention any terms of a contract. It compares the bids.

If a contract was formed between the parties then the terms of the contract must be identified from events which occurred before July 30, 1987. According to the testimony of Steven Rogers Crook, the original mechanical contractor on the job was Eurostyle Construction Co. On April 16, 1987 Crook submitted a proposal to Eurostyle. Crook proposed to furnish and install a burner and control equipment to convert an existing Keeler CP boiler at the jobsite "according to the price and terms shown." Terms referred to manner of payment. The bid specifically provided for payment "90% 15 days (optional terms) Balance 15 days After Start–Up." Eurostyle withdrew from the project. Crook was informed that C & R was the successor mechanical contractor.

On May 22, 1987 Mr. Crook, a representative for Keeler/Door–Oliver Boiler Company [Keeler], sent a letter to C & R Heating, attention Tom Kuthe. The letter informed C & R that Crook would install a burner on a field-erected Keeler boiler which Crook delivered and installed many years previous. The letter requested an interview. In response to a telephone call from Kuthe, a meeting was arranged. At the time of the meeting other bidders were submitting proposals to C & R. C & R had a copy of Crook's proposal # 41687–1 of April 16, 1987, addressed to Eurostyle Construction Company. At the time of Crook's meeting with Kuthe, Crook had not submitted a proposal addressed to C & R. The parties discussed the proposal addressed to Eurostyle.

Two to three weeks after the meeting Kuthe sent Crook a purchase order. The order bears the date of July 23, 1987. It provides for "progress payments." There is no mention of the acceptance of payment of 90% in 15 days and a balance 15 days after start-up. One week later, Crook received a copy of the July 30, 1987 letter of C & R sent to all bidders.

There was also evidence of events occurring after July 30, 1987, the alleged date of contract, which may be relevant as the proof of existence of a contract on that date. After receiving C & R's purchase order, Crook undertook preparation of plans for combustion controls for the new burner. Crook also requested Keeler to begin drafting work.

On August 10, 1987 Mr. Crook sent a letter to Kuthe about the C & R purchase order. Crook observed, the order "is too general and might cause some confusion in the future." Crook then requested an amendment or reissuance of the purchase order with a suggestion that C & R adopt the scope of the work listed in Crook's proposal or, at least, include scope "by referencing our proposal in your purchase order."

On August 11, 1987 Crook sent the following letter to C & R:

Due to a lack of communication in our office, I find out that we failed to send you the formal proposal referenced in yesterday's letter. This proposal is included herein.

The only change between this proposal and the copy of the Eurostyle proposal you have is that the control panel will be furnished to the jobsite but not set by us. The electricians will claim this work and electrical work is not part of our scope.

Sorry for the oversight.

Crook included in the letter proposal #7387-1 which was back dated July 21, 1987. The proposal is similar to, but not the same as the earlier proposal #41687-1 dated April 16, 1987 which was discussed by Crook and Kuthe in the meeting held before C & R sent a purchase order. The significant difference is a change in terms of payment. In place of 90% within 15 days (optional terms) and balance 15 days after start-up, Crook substituted the following:

An F.S. Crook, Inc. Escrow Account pertaining to this job will be established at Boatmen's National Bank. As material is furnished to the jobsite or labor performed, invoices on a monthly basis will be issued. Remittance on these invoices will be payable within 15 days by check made out to this escrow account.

Interest on the funds in the above escrow account will be credited to F.S. Crook, Inc.

After the completion of the performance test required by the specifications the funds in the above escrow account will be withdrawn by F.S. Crook Inc.

While Crook and C & R were corresponding, Keeler and Crook were working on submittal data and drawings. The C & R purchase order requested copies of submittal shop drawings within five days of the purchase order. However, Crook testified, "[t]here was no way I was going to do that." Crook called Ruth McDonough, secretary and customer service coordinator at C & R. He informed her that it would take 30 days to submit drawings. Her response was "... hurry up as best you can, and that would be fine." That telephone call was made on August 19, 1987.

On August 26, 1987 C & R sent a letter of transmittal and two subcontract agreements to Crook. Crook was told to sign in the proper spaces and return one copy "if this subcontract form is agreeable with you." The proposed subcontract was printed and typed. It contained a provision for payment by C & R as contractor, to Crook as subcontractor. If accepted, the subcontract would require Crook to accept payment ten days after C & R received progress payments from the owner of an amount earned, less retainage. The percentage of retainage by C & R was to be the same as the percentage retained by owner from C & R. One provision of the subcontract directly conflicts with Crook's bid. Crook proposed to add taxes, if any, to the bid price. The subcontract provided that taxes were included within the price payable to C & R. Both copies of the proposed subcontract were pre-signed by Kuthe, for C & R.

On August 28, 1987 Crook responded by letter to C & R. Crook informed C & R that he had reviewed the subcontract agreement. Crook requested a copy of the general contract between the owner and C & R. Crook's letter contained references to specific sections of the subcontract and requested deletions and substitutions. There is no mention in the letter of August 28, 1987 of an existing contract. When C & R failed to contact Crook, following Crook's letter, Crook called C & R. Crook was informed to hold up because C & R was reviewing the project. On September 23, 1987 Crook wrote a letter to C & R. He

informed them that while C & R was "evaluating the installation part of our proposal, you should consider" some changes of design because of insufficient space for some of the equipment. Two days later Kuthe addressed a letter to Crook referring to Crook's letters sent in August. He informed Crook that C & R had reconsidered the entire project and decided to purchase only the burner; installation would be done by C & R. "Consequently, your quotation on the burner package is not the low bid and I have decided to purchase the burner from Debco Equipment Company." The letter does not mention cancellation of an existing contract.

Mr. Crook called Kuthe. Crook mentioned cancellation charges and testified Kuthe coldly said, "Well, send me your cancellation charges." On October 5, 1987 Crook billed C & R $9,915 for cancellation charges. The trial court entered judgment for Crook in that amount.

No agreement was ever reached on the disputed terms of payment. Crook had the burden of proving the agreement was enforceable. *Coffman Indust., Inc. v. Gorman–Taber Co.*, 521 S.W.2d 763, 768 (Mo.App.1975). An uncommunicated intention to accept an offer is not an acceptance. *Thacker v. Massman Constr. Co.*, 247 S.W.2d 623, 629–30 (Mo.1952). Accordingly, Crook does not contend and did not prove that he ever accepted the terms of payment offered in C & R's purchase order. The terms of payment in Crook's bid to Eurostyle, discussed with C & R, are materially different than the terms of payment in C & R's purchase order, Crook's subsequent amended bid addressed to C & R and the proposed, but unexecuted subcontract presented by C & R to Crook. As a result, Crook offered no evidence from which the court could find any agreement on terms of payment for a total price of $83,350, plus any applicable taxes.

C & R's purchase order of July 23, 1987 did not accept the terms of payment originally proposed by Crook to Eurostyle. Crook's subsequent proposal to C & R contained provisions for payment which varied from both its proposal to C & R (addressed to Eurostyle) and C & R's purchase order. The offer of Crook in its original bid proposal was never accepted by C & R. The counter offer of C & R on terms of payment contained in its purchase order was never accepted by Crook.

The exchange of documents after the alleged date of contract, July 30, 1987, requires the conclusion that the parties continued to negotiate terms of payment after the alleged date of agreement. They also continued to negotiate scope of work and time for performance. There was no evidence from which the court could find that the parties entered into an enforceable contract or that C & R agreed to pay for any services begun before an agreement was reached.

We reverse.

PUDLOWSKI, P.J., and CRANDALL, J., concur.