Arthur ROGERS and Norma Rogers, Husband and Wife, Plaintiffs–Respondents,

v.

Angela M. HESTER, Deceased by Ann MILLS, Defendant Ad Litem, Defendant–Appellant.

Nos. SD 30144, SD 30167.

Missouri Court of Appeals, Southern District, Division One.

Dec. 1, 2010.

Rehearing Denied Dec. 23, 2010.

Application for Transfer Denied April 26, 2011.

Steven J. Hughes, St. Louis, MO, for Appellant.

Cynthia O. MacPherson, Mountain Grove, MO, for Respondents.

DON E. BURRELL, Judge.

Although this consolidated appeal ostensibly stems from an automobile collision that occurred in Springfield on November 7, 2002, in which Angela Hester ("Hester") was killed and Arthur Rogers ("Plaintiff") was injured, it has instead become a contest about the importance of everyone in court "playing by the rules" and what consequences should flow from a failure to do so. Ann Mills ("Defendant") brought two separate appeals as Hester's Defendant *ad Litem.* The first (SD30144) purports to challenge a "judgment" entered after a "bench trial." That "judgment" found that Plaintiff, by signing a document entitled "Release and Settlement Agreement"[1] after first adding to it an additional term, had not agreed to settle all of his claims arising out of the collision for $50,000.

After the trial court found that no settlement had been reached, Plaintiff's claim against Defendant for injuries he allegedly suffered in the collision was tried to a jury.[2] At the conclusion of that trial, the jury found Defendant negligent and returned a $1,451,112 verdict in favor of Plaintiff. The trial court thereafter entered a judgment consistent with that verdict. Defendant's second appeal (SD30167) purports to challenge the trial court's denial of Defendant's subsequent post-trial motion requesting a new trial.[3]

1. Although Defendant refers to this document in her brief as "General Release," for reasons more fully set forth below, we use the title that appears on the release attached to Defendant's motion for summary judgment.

2. Plaintiff's wife had also filed a claim for the loss of her husband's consortium, but that claim was voluntarily dismissed before the case was submitted to the jury.

3. An order denying a motion for new trial is not the proper subject of an appeal. However, we choose to treat Defendant's second appeal as an appeal from the underlying judgment. As stated in *Southard v. Southard,* 239 S.W.3d 172, 174 (Mo.App. E.D.2007):

 The denial of a motion for new trial is not appealable. *Yaeger v. Olympic Marine Co.,* 983 S.W.2d 173, 185 (Mo.Ct.App.E.D.1998) (citing *Hitt v. Martin,* 872 S.W.2d 121, 122

Defendant presents six points that claim the trial court erroneously: 1) relied on inadmissible parol evidence in ruling that the "Release and Settlement Agreement," as modified by Plaintiff, constituted a counter-offer, not an acceptance; 2) allowed Plaintiff to present seven different types of inadmissible evidence and make improper arguments to the jury; 3) allowed Plaintiff's counsel to misstate the law by asserting "that Defendant had the burden of proof of having Plaintiff examined by a medical doctor and/or valuing plaintiff's case[;]" 4) permitted Plaintiff to submit a claim for future damages unsupported by any evidence, admitted hearsay evidence regarding future damages, and then submitted a jury instruction regarding future damages; 5) admitted improper testimony from lay and expert witnesses; and 6) deprived Defendant of a fair and impartial jury due to the cumulative affect of the errors asserted in points two through five.

Because Defendant disregarded the rules governing how appeals are to be presented and decided, many of her claims of error were not properly preserved for our review and must be dismissed. Finding no merit in those that remain, we affirm the judgment of the trial court.

## Background Facts

We here present the facts favorable to the jury's verdict.[4] *See Reiss & Goodness Eng'rs, Inc. v. City of Goodman*, 303 S.W.3d 605, 610 (Mo.App. S.D.2010). On November 7, 2002, Plaintiff was operating a tractor-trailer unit on Division Street when Hester, traveling in the opposite direction in a pick-up truck she was driving, crossed the center line. Plaintiff moved his rig over to try and avoid Hester's oncoming vehicle but was unsuccessful in preventing a collision. Hester died of the injuries she received when the vehicles collided. Plaintiff declined medical attention at the scene but began feeling pain in his neck and back as he was riding from the scene with a co-worker. He "immediately" went to see his doctor, then saw another doctor approximately three-to-five days later, who ordered additional "follow-up."

Eventually, Plaintiff received injections in his neck, spine and shoulder, had surgery on both shoulders, and engaged in physical therapy. He continued to experience neck pain and was no longer able to perform many of his previous activities. When Plaintiff tried to engage in those activities, he subsequently spent several hours at a time lying on the floor with his legs propped up to help relieve his resulting pain.

At the jury trial, in addition to his own testimony, Plaintiff presented the live testimony of a vocational rehabilitation counselor, a physical therapist, a medical evaluation expert, an economist, witnesses to the accident scene, witnesses familiar with

(Mo.Ct.App.E.D.1994)). However, in both *Yaeger* and *Hitt*, we proceeded to apply the correct standard of review for an appeal from the judgment itself, rather than the denial of the motion for new trial. *See Yaeger*, 983 S.W.2d at 185; *Hitt*, 872 S.W.2d at 122. Therefore, we note that [the appellant] may not appeal from the denial of his motion for rehearing, but that his appeal is in all other respects an appeal from the trial court's judgment and we will review it as such.

*See also Hutson v. BOT Inv. Co., Inc.*, 3 S.W.3d 878, 884 n. 4 (Mo.App. S.D.1999) (appeal from order denying motion for new trial construed as appeal from trial court judgment).

4. Defendant's response to Plaintiff's motion to dismiss the appeal notes that Defendant does not "disput[e] the facts of the actual accident."

Plaintiff and his activities, and the video-taped depositions of two treating doctors.

The only evidence presented by Defendant—other than testimony elicited through the cross-examination of Plaintiff's witnesses—consisted of playing for the jury a portion of Plaintiff's videotaped deposition. Additional relevant facts will be set forth below in the context of our discussion of the particular point to which they relate.

### The Deficiencies in Defendant's Brief Substantially Impede Appellate Review

 In both a separate motion to dismiss and in his brief, Plaintiff asks us to dismiss Defendant's appeal based on briefing deficiencies regarding Defendant's statement of facts, points relied on, and argument. *See* Rule 84.04(a), (c), (d), (i), and Rule 81.12(e).[5] "A brief that fails to comply with Rule 84.04 preserves nothing for appellate review. Compliance with the requirements of Rule 84.04 is mandatory." *State ex rel Koster v. Allen*, 298 S.W.3d 139, 144 (Mo.App. S.D.2009) (internal citation omitted). An appellant who files a brief that violates the requirements of Rule 84.04 risks having his appeal dismissed. *Id.* at 145. But a dismissal based on briefing deficiencies is not the preferred result, and appellate courts have the discretion to consider a defective point if the deficiencies involved are not so seri-

ous as to impede review. *See Bolt v. Giordano*, 310 S.W.3d 237, 242 (Mo.App. E.D.2010). "A brief impedes disposition on the merits if it fails to give notice to the other parties and to the appellate court of the basis for the claimed error." *Bolz v. Hatfield*, 41 S.W.3d 566, 571 (Mo.App. S.D. 2001). When review is impeded, "a point must be disregarded, reviewed only for plain error, or the appeal with respect to that point dismissed." *Id.*

Although none of Defendant's points fully comply with the requirements of Rule 84.04, we find that the nature and degree of the deficiencies involved allow us to place them into two separate categories. Points II, IV, and V are hopelessly deficient and are dismissed.[6] Points I, III, and VI are not so deficient as to impede appellate review and will be addressed on the merits.[7] Before we address Defendant's points, we begin our review with some examples of problems with the statement of facts and argument sections of her brief.

### *Defendant's Statement of Facts Violates Rule 84.04(c)*

 Plaintiff asserts Defendant's statement of facts is deficient because:

(1) it is not a fair recitation of the facts relevant to this Court's review; (2) it omits the facts relied on by [Plaintiff] which support the trial court's rulings; (3) it contains argument and improper

---

5. All rule references are to Missouri Court Rules (2010).

6. Counsel for Defendant stated at oral argument that he decided to group his challenges together by "principles of law" rather than challenge each individual trial court ruling (or non-ruling) because it was the only way he could inform us of the thirty-plus prejudicial errors he believes were committed by the trial court and still comply with our stated page limitation for appellate briefs. This novel approach puts us in mind of a statement from

the "How to Use This Book" section of Missouri Approved Instructions: "You may have the ability to improve an instruction in MAI but you do not have the authority to do it. Do not do it." MAI, *"How To Use This Book,"* p. XLIX (6th ed.2002). The same principle applies to Rule 84.04. Its provisions are mandatory; they are not suggested guidelines.

7. Plaintiff's motion to dismiss the entire appeal and "award frivolous appeal damages" is denied.

commentary on the evidence; (4) it is inaccurate, incomplete and misstates the evidence; and (5) it fails to include proper page references to the transcript.

Defendant responds that she is not disputing the facts of the accident and is instead focused on the "unfairly prejudicial impact of Plaintiff's counsel's actions and the trial court's ineffective or non-existent attempts to cure Plaintiff's counsel's improprieties before the jury and Plaintiff's improper submission of certain evidence."

Rule 84.04(c) provides that "[t]he statement of facts shall be a fair and concise statement of the facts relevant to the questions presented for determination without argument." Interspersing argument throughout the statement of facts violates Rule 84.04. *Allen*, 298 S.W.3d at 143. Defendant's statement of facts improperly contains argument. The following is a representative sample with identification of the nature of the offense contained in parenthetical statements.

- "Plaintiff[ ] accepted [Hester's] offer by signing the 'General Release' on February 29, 2008 before a notary public." (Whether Plaintiff's signing of the release constituted the acceptance of an offer was the ultimate issue in dispute at the parties' "bench trial")
- "At the time of the execution of the 'General Release,' Plaintiff[ ] purportedly stamped a modification to the original General Release that states:...." (Suggesting that Plaintiff may not have added a modification to the release is argumentative)
- "In closing, [Plaintiff's counsel] repeatedly made 'Golden Rule' type argument [sic] to the jury." (Defendant's classification of opposing counsel's arguments is argumentative)
- "Plaintiff['s] counsel misstated the law to the jury during closing argument by arguing that Defendant had the burden of the proof[.]" (Defendant's conclusion that counsel misstated the law is argumentative)
- "Plaintiff's counsel continued to suggest that Defendant had a burden of proof[.]" (Defendant's statement that counsel continued to suggest a legal burden is argumentative)
- "During opening statement, Plaintiff's counsel, without first raising the issue with the trial court or defense counsel, injected hearsay into the trial[.]" (Defendant's assertion that certain evidence was hearsay is argumentative)
- "Plaintiff's counsel suggested, in referencing hearsay reports of various doctors, as if they were going to testify, although they did not, that [Plaintiff] was going to need neck surgery." (Defendant's conclusions that counsel was suggesting a particular matter and that it was done with the use of hearsay are argumentative)
- "[Plaintiff's counsel] ignored the Court's instruction[.]" (Defendant's conclusion that counsel disregarded the trial court's directive is argumentative)
- "Plaintiff's counsel also exceeded the permissible lay witness testimony in the following instances:...." (Defendant's assertion that counsel exceeded a legal limitation is argumentative)

The statement of facts should also be fair and concise. Rule 84.04(c). In some instances, Defendant's brief asserts facts that are not accurate or are misleading by leaving out additional facts pertinent to the fact cited. For example, Defendant stated, "In voir dire, over defendant's objection, [Plaintiff's counsel] asked the venire panel the 'insurance question' and stated: 'Is anyone a policy holder, employee, board member or director of Zurich Insurance

Company, Progressive Northwestern Insurance Company, or Empire Fire and Marine Insurance Company?'" Contrary to Defendant's claim, the record reveals that Defendant did not object when this question was asked. Although Defendant raised an objection to the question in a pretrial motion, counsel did not object when the question was actually asked during *voir dire.* Defendant then states that Plaintiff's counsel immediately asked a question about Enterprise Rent–A–Car after asking the insurance question. What Defendant fails to include is that she did not object when the question was asked.

There are similar deficiencies elsewhere in Defendant's statement of facts. For instance, Defendant complains that "references to the death of [Plaintiff's] prior wife continued throughout the trial." Defendant fails to point out that several of these references were made without any objection from Defendant. Defendant did eventually object and was granted a continuing objection. In another instance, Defendant's statement of facts improperly argues that Plaintiff "injected worker's compensation into the civil jury trial[.]" Although Defendant cites the transcript reference for Plaintiff's counsel's first question to the panel about worker's compensation, she does not point out that no objection was made to that question or to any of the discussion that followed it. Defendant did object to a subsequent *voir dire* question on this topic, but did not object later when Plaintiff's counsel discussed the topic further with two panel members who volunteered additional information about worker's compensation. Finally, while Defendant correctly cites Plaintiff's counsel's references to "company doctors" and "a case manager" in questions she asked Plaintiff's wife, Defendant does not inform us that she failed to object. Defendant also voiced no objection to the use of these terms when Plaintiff's

counsel earlier questioned other witnesses about "company doctors" and "a case manager."

### *Defendant's Argument Section Violates Rule 84.04(i)*

■ Rule 84.04(i) requires that "[a]ll statements of fact *and argument* shall have specific page references to the legal file or the transcript." (Emphasis added). "If the court were to take the time on its own initiative to comb the record for support of factual assertions in a brief, we would, in effect, become an advocate for the non-complying party." *Woods v. Friendly Ford, Inc.,* 248 S.W.3d 699, 713 (Mo.App. S.D.2008). While Defendant's statement of facts generally provides citations to the transcript and legal file (albeit with the deficiencies noted above), the argument section of Defendant's brief only occasionally cites the record. The vast majority of factual allegations presented in the argument section of Defendant's brief contain no references to the record and are also general, not specific. In her response to Plaintiff's motion to dismiss, Defendant maintains that "each and every fact stated in Appellant's Brief is clearly cited to the record in her Statement of Facts." But the requirements of Rule 84.04(i) are not limited to the statement of facts; the argument section of a brief must also include citations to the record.

Some examples may be helpful here. The following is a portion of Defendant's argument in support of her second point: "Beginning in opening, [Plaintiff's counsel] began her studied effort to gain the sympathy of the jury through improper means [no citation to the record]. Defendant objected to each such reference and every objection was overruled [no citation to the record]." Defendant then argues, "Although the trial court verbally acknowledged the prejudicial effect of such testi-

mony and arguments, the trial court, nonetheless, allowed [Plaintiff's counsel] to seize the opportunity to gain the sympathy of the jury through irrelevant and improper means beginning in opening arguments and continuing through the evidence portion of the case and into closing arguments [no citations to the record]."

In her argument supporting point IV, Defendant states, "At trial, over Defendant's objection, Dr. Bennoch was allowed to testify that Plaintiff 'might' or 'may' need a future neck surgery [no citation to the record]. He did not testify with proper evidentiary certainty that a future surgery was necessary [no citation to the record]." Defendant then argued, "Additionally, Plaintiff injected hearsay statements, unsupported by evidence, into the trial, advising the jury on multiple occasions that 'doctors' would testify that Plaintiff needed a future neck surgery or that a future neck surgery was required [no citation to the record]. No surgeon testified at trial. Only one of Plaintiff's treating doctors testified at trial, Dr. Ball, a non-surgeon [no citation to the record]."

In support of her fifth point, Defendant argues, "Witness Elliot was allowed to testify, over Defendant's objection, about whether [Plaintiff] could have avoided the accident at issue [no citation to the record]. Although the testimony was stricken by the trial court, the bell had been 'rung [no citation to the record].' " An appellant's failure to cite the record in the argument section of a brief makes it very difficult to determine whether the facts support (or fail to support) the appellant's legal argument. This is especially true when—as here—the appellant paraphrases the evidence and the paraphrase used in

the argument section is not identical to that set forth in the statement of facts.

### Points II, IV and v. Violate Rule 84.04(d)(1)

■ Under Rule 84.04(d)(1), Defendant's brief must present points relied on that "(A) identify the trial court ruling or action the appellant challenges; (B) state concisely the legal reasons for the appellant's claim of reversible error; and (C) explain in summary fashion why, in the context of the case, those legal reasons support the claim of reversible error." "Structuring a point relied on so that it groups together contentions not related to a single issue violates Rule 84.04." *Martin v. Reed,* 147 S.W.3d 860, 863 (Mo.App. S.D.2004) (footnote omitted). "Such points are multifarious and preserve nothing for appellate review." *Rushing v. City of Springfield,* 180 S.W.3d 538, 539 (Mo.App. S.D.2006).

### Point II

■ Defendant's second point attempts to group together at least seven different allegations of trial court error. The point states:[8]

THE TRIAL COURT ERRED IN DENYING DEFENDANT'S MOTION FOR NEW TRIAL AFTER THE JURY TRIAL BECAUSE [1] THE COURT ALLOWED IMPROPER ARGUMENT BY PLAINTIFF'S COUNSEL IN THAT PLAINTIFF'S COUNSEL WAS ALLOWED TO ELICIT IRRELEVANT AND UNFAIRLY PREJUDICIAL TESTIMONY REGARDING THE DEATH OF PLAINTIFF'S PRIOR WIFE; [2] INJECT IMPROPER WORKER'S COMPENSATION ISSUES INTO THE CIVIL

8. We have inserted in some of Defendant's points a succession of numbers (located inside brackets in bold type) indicating what, at a minimum, we believe to be separate allegations of trial court error.

TRIAL; [3] REPEATEDLY ASK THE JURY FOR A "COMMITMENT" REGARDING MONETARY DAMAGES DURING JURY SELECTION; [4] INJECT IMPROPER INSURANCE ISSUES INTO THE TRIAL; [5] MAKE AN IMPROPER "GOLDEN RULE" ARGUMENT TO THE JURY; [6] MAKE PERSONAL ATTACKS ON DEFENDANT AND DEFENSE COUNSEL IN THE PRESENCE OF THE JURY; AND [7] ARGUE THE CONTENTS OF DEFENDANT'S ANSWER IN CLOSING ARGUMENTS.

Defendant asserts that "[t]he concise statement of the legal reasons for [Defendant's] claim of reversible error in Point II above is the consideration of improper statements and argument by Plaintiff's counsel." Defendant also argues that the point provides notice to Plaintiff "of the precise matters being appealed and this Court has been informed of the issues presented for resolution[,]" citing *Thummel v. King*, 570 S.W.2d 679, 686 (Mo. banc 1978). Defendant is correct that the rule requires notice, but it requires more than that; it must alert the opponent and this court that Defendant complains about certain events. As our high court explained in *Thummel*, a

> [c]lear statement of the points relied on facilitates full advocacy and affords the opportunity for clarification by meaningful questions directed to the issues stated in the points relied on. If the appellate court is left to search the argument portion of the brief (or even worse, to search the record on appeal) to determine and *clarify the nature of the contentions asserted*, much more is at stake than a waste of judicial time (even though in this time of increased litigation and heavy caseloads, that alone is sufficient justification for the rules). The more invidious problem is that the court may interpret the thrust of the

contention differently than does the opponent or differently than was intended by the party asserting the contention. If that happens, the appellate process has failed in its primary objective of resolving issues raised and relied on in an appeal.

*Id.* (emphasis added).

A point addressing multiple issues is not concise. For example, in *Thummel*, although one of appellant's deficient points appeared short on its face, it was actually an

> attempt to shotgun refusal of all of the proposed findings into one point or one allegation of error. Examination of [the] proposed findings ... discloses that they do not relate to a single issue. Instead, they relate to numerous issues. If appellant had selected the finding or findings pertaining to one issue and then stated in a point relied on that specified evidence required a finding of a particular fact or facts and that certain numbered proposed findings of fact properly stated the finding the court should have made thereon and that failure to make said findings was error because (then stating the reasons), there would have been compliance with the rule. Similar points should be stated for each of the issues in the case on which appellant believes the court should have given particular proposed findings of fact, including therein wherein and why failure to make the finding was erroneous.

570 S.W.2d at 688.

Although Defendant maintains that, in her case, "[n]o one point contains alleged claims of error involving multiple *principles* of law[,]" point II clearly constitutes a "shotgun" approach to raising allegations of error. Defendant states that point two is about the single issue of improper argument by Plaintiff's counsel. But the point clearly asserts *both improper evidence and*

*argument* and challenges the denial of a new trial ultimately based upon *multiple* events and *multiple* rulings by the trial court during *voir dire*, opening statement, the presentation of evidence, and closing argument. As best we understand Defendant's point II, as expounded in the argument section that follows, it raises alleged trial court error in denying the motion for new trial based on the following seven principles:

1. Undue prejudice caused by sympathy: Whether argument by Plaintiff's counsel and testimony by witnesses about the death of Plaintiff's prior wife were irrelevant and were unduly prejudicial because they caused the jurors to feel sorry for Plaintiff;

2. Improper calculation of damages: Whether argument and references by Plaintiff's counsel regarding worker's compensation issues presented a false issue of damages to the jury in that any ultimate recovery might be reduced by an obligation by Plaintiff to make a reimbursement for any benefits received as a result of the worker's compensation system;

3. Improper suggestion of a "deep pocket:" Whether references by Plaintiff's counsel during *voir dire* to Enterprise Rent–A–Car, in addition to asking about insurance companies, was unduly prejudicial by suggesting to the panel that "Defendant was backed by a 'deep pocket[ ][;]' "

4. Improper attempt to obtain a commitment from the panel: Whether four questions asked by Plaintiff's counsel in *voir dire* regarding a large verdict improperly asked the potential jurors to make a financial commitment before hearing the evidence;

5. Improper personalization in closing argument: Whether arguments by Plaintiff's counsel in closing about Plaintiff's pain cònstituted an impermissible "Golden Rule" argument;

6. Improper personal attacks against opponent: Whether Plaintiff's counsel made personal attacks against Defendant and Defendant's counsel in closing argument that caused the jury to be prejudiced against Defendant; and

7. Improper argument regarding the legal effect of pleadings: Whether Plaintiff's counsel improperly argued the contents of Defendant's answer to the jury.

If properly presented, each of these issues would involve a separate ruling (or non-ruling) by the trial court and whether Defendant had lodged a timely and sufficient objection. In turn, those objections, non-objections, and rulings would involve the application of different legal rules, not the least of which might be differing standards of review.[9] The failure to cite the record as each argument is made only compounds the problem. To overcome these material deficiencies would require us to "determine and clarify the nature of the contentions asserted"—an advocacy role wholly improper for a reviewing court to assume. *See Thummel,* 570 S.W.2d at 686. Because point II is deficient to a degree that impedes appellate review, it is dismissed.

*Point IV*

■ Point IV reads as follows:

THE TRIAL COURT ERRED IN DENYING DEFENDANT'S MOTION FOR NEW TRIAL AFTER THE JURY TRIAL BECAUSE THE COURT: ALLOWED PLAINTIFF'S COUNSEL TO SUBMIT TO THE

9. In her reply brief, Defendant requests discretionary plain error review for matters in Point II that were not preserved. We choose not to exercise that discretion in this instance.

Plain error review is not common in civil cases and is generally reserved for instances of manifest injustice. *See Carroll v. Kelsey,* 234 S.W.3d 559, 565 (Mo.App. W.D.2007).

JURY A CLAIM FOR FUTURE DAMAGES ALTHOUGH UNSUPPORTED BY THE EVIDENCE IN THAT THE COURT: [1] ALLOWED DR. SHANE BENNOCH TO TESTIFY AS TO "POSSIBLE" FUTURE SURGERY; █ IMPROPERLY ADMITTED HEARSAY TESTIMONY REGARDING POSSIBLE FUTURE SURGERY; █ IMPROPERLY ADMITTED EXHIBIT 7 (THE PURPORTED COST OF FUTURE SURGERY); AND [4] ALLOWED M.A.I. 4.01 REGARDING FUTURE MEDICAL DAMAGES TO BE SUBMITTED TO THE JURY.

This point asks us to address multiple legal issues encompassed within what we presume Defendant claims to be a single "principle of law"—the viability of what he claims was a request by Plaintiff for an award of future damages based on a possibility that Plaintiff might someday need to undergo neck surgery. The actual matters contested within this multifarious point include allegations of insufficient evidence, impermissible expert testimony, inadmissible hearsay from an unidentified witness, the improper admission of an exhibit, and the submission of a faulty jury instruction. Like point II, Defendant's fourth point improperly combines multiple, dissimilar claims of error into a single point in violation of Rule 84.04(d). *Rushing*, 180 S.W.3d at 539. The violation impedes appellate review. Point IV is dismissed.

### Point V

█ In addition to improperly grouping multiple claims of error into a single point, Point V also fails to state the specific trial court rulings alleged to be erroneous and does not state with particularity the testimony that Defendant believes demonstrates the harm caused by the alleged error. Point V states:

THE TRIAL COURT ERRED IN DENYING DEFENDANT'S MOTION FOR NEW TRIAL AFTER THE JURY TRIAL BECAUSE THE COURT ERRED IN RULING ON CERTAIN EVIDENTIARY ISSUES IN THAT THE COURT ADMITTED IMPROPER TESTIMONY FROM LAY WITNESSES [at least 2] AND EXPERT WITNESSES [at least 2 more].

To review this allegation on the merits, opposing counsel and this court would have to seine the record and Defendant's argument section in an attempt to identify the rulings about which Defendant complains. Once again, to do so would take us outside of our proper function. As explained in *Thummel,*

> [i]t is not the function of the appellate court to serve as advocate for any party to an appeal. That is the function of counsel. It would be unfair to the parties if it were otherwise. That is the reason for the sometimes expressed unwillingness of an appellate court to assume the role of counsel and advocate for a party on appeal. When counsel fail in their duty by filing briefs which are not in conformity with the applicable rules and do not sufficiently advise the court of the contentions asserted and the merit thereof, the court is left with the dilemma of deciding that case (and possibly establishing precedent for future cases) on the basis of inadequate briefing and advocacy or undertaking additional research and briefing to supply the deficiency. Courts should not be asked or expected to assume such a role.

570 S.W.2d at 686. Point V is dismissed.

### Points That May be Reviewed on the Merits

*Point I—addressing appeal SD30144— The Effect of the Altered "Release and Settlement Agreement"*

Defendant's first point claims the trial court erred in ruling after the "bench tri-

al" "that the General Release was a counter offer because the court relied on inadmissible parol[ ] evidence in that the General Release ... was clear, unambiguous, and enforceable as written."

Before considering point I, we must address a potential obstacle to appellate review. It does not appear that the trial court's ruling following the "bench trial" constituted a final judgment or decree. In a pretrial conference held on May 4, 2009, the trial court set a "[h]earing on issue of release." The record on appeal contains a transcript of a hearing held on June 11, 2009. That transcript is entitled "bench trial." The transcript indicates that the hearing began with considerable confusion over which party should present evidence first. Ultimately, Defendant went first, producing evidence in support of her affirmative defense of release. During the course of the hearing, Plaintiff made an oral motion "to prevent any evidence of any kind of release coming in for any reason as this was settlement negotiations." No judgment or decision was announced by the trial court at the conclusion of the hearing. A subsequent docket entry entitled "Motion Granted/Sustained" granted Plaintiff's request that Defendant be barred from relying on the release as an affirmative defense at trial.[10] That docket entry does not satisfy the provision of Rule 74.01(a) that "[a] judgment is entered when a writing signed by the judge and denominated judgment' or 'decree' is filed." Although a docket sheet entry signed by a judge is a sufficient writing, it must still be labeled as a "judgment" or "decree." *Lake Osage Condo. Ass'n. v. Prewitt*, 179 S.W.3d 331, 335–36 (Mo.App. S.D.2005). The docket entry in this case was not signed by the judge and was not denominated as either a "judgment" or "decree."

In response to the docket entry, Defendant filed a "motion for new trial." The trial court did not rule on the motion until it specifically denied it after having entered its monetary damages judgment in favor of Plaintiff following the jury trial. That judgment made no reference to Defendant's affirmative defense of release or Plaintiff's request that Defendant not be allowed to present any evidence on it during the trial.

Because the trial court's docket entry following the evidentiary hearing held June 11, 2009, was not a judgment, it was not an appealable ruling and amounted to nothing more than an *in limine* indication of how the trial court would likely handle the matter at trial. "The grant of a motion in limine is an interlocutory order, and therefore not a potential source of reversible error." *Columbia Mut. Ins. Co. v. Long*, 258 S.W.3d 469, 474 (Mo.App. W.D.2008). When a motion in limine is granted so as to exclude evidence from trial, the party offering the evidence must still offer it at trial in order to preserve the issue for review on appeal. *Henderson v. Fields*, 68 S.W.3d 455, 469 (Mo.App. W.D.2001); *Portis v. Greenhaw*, 38 S.W.3d 436, 447 (Mo.App. W.D.2001).

---

10. The docket entry stated:

**Motion Granted/Sustained**

The Court finds Plaintiff communicated to Deft's [sic] Counsel Gilbert's changes in Deft [sic] proposed release that Deft [sic] urges the court to enforce.

Notwithstanding deft's [sic] check being cashed and held in escrow by agreement, Plaintiff's amendment of terms is found to rise to the level of a "counter offer" rather than acceptance as advocated by Deft Gilbert [sic].

The court will therefore sustain Plaintiff's request that "release" will not be an available affirmative defense at trial. DC/ia (Notices) [Ashley Gilbert was defendant ad litem at the time of the docket entry, Ann Mills was substituted as defendant ad litem on July 20, 2009.]

"A motion in limine, by itself, preserves nothing for appeal." *Hancock v. Shook*, 100 S.W.3d 786, 802 (Mo. banc 2003). Here, because the court's docket entry did not constitute a judgment and Defendant did not attempt to offer evidence concerning the release during the jury trial, the matter was not preserved for appeal.

■■■■ Even if the court's docket entry had qualified as an appealable judgment or decree, we note that the release presented to the trial court at the June 11th hearing has not been included in the record on appeal. The transcript reflects that Defendant's "Release and Settlement Agreement dated 2–29–08" was admitted as Defendant's "Exhibit 1" at that hearing. No such Exhibit 1 is contained in the either the Legal File or Supplemental Legal File, and the only exhibits deposited with this court are Plaintiff's Exhibit 7 and Defendant's Exhibit G. "When exhibits are omitted from the transcript and are not filed with the appellate court, the intendment and content of the exhibits will be taken as favorable to the trial court's ruling and as unfavorable to the appellant." *Shadow Lake of Noel, Inc. v. Supervisor of Liquor Control*, 893 S.W.2d 835, 839 (Mo. App. S.D.1995). Documents that are not a part of the legal file are generally not considered on appeal, but "a statement of fact asserted in one party's brief and conceded as true in the opposing party's brief may be considered as though it appears in the record." *In re Nitsche*, 46 S.W.3d 682, 684 (Mo.App. S.D.2001).

Here, while Plaintiff presumably does not contest the content of his own exhibits, and two exhibits Plaintiff attached to his pleadings may be very similar (if not identical) to Defendant's Exhibit 1, Plaintiff objected to Exhibit 1 at the June 11, 2009, hearing and it does not appear that Plaintiff has expressly conceded in his brief the content of Exhibit 1. A copy of a modified release appears in three locations in the supplemental legal file: 1) an exhibit originally attached to Defendant's memorandum in support of her motion for summary judgment; 2) Plaintiff's "Statement of Uncontroverted Facts;" and, 3) Plaintiff's response to Defendant's "Statement of Additional Facts."

Rule 81.12(a) provides that "[t]he record on appeal shall contain all of the record, proceedings and evidence necessary to the determination of all questions to be presented, by either appellant or respondent, to the appellate court for decision." Rule 81.12(e) provides that the "[a]ppellant is responsible for depositing all exhibits that are necessary for the determination of any point relied on." We should not assume that the Exhibit 1 challenged in Defendant's first point is identical to the various other exhibits entitled "Release and Settlement Agreement" that were attached to other pleadings.[11] Because Defendant failed to include Exhibit 1 in the record on appeal, we presume its contents would not be favorable to Defendant's position. *Shadow Lake*, 893 S.W.2d at 839.

■■■ If the trial court's ruling had qualified as an appealable judgment and we presumed that Defendant's Exhibit 1 offered in the June 11th hearing was identical to the exhibit attached to Defendant's memorandum in support of her motion for summary judgment (and that we should review it even though it was not offered into evidence at the jury trial), Defendant would still not be entitled to prevail.

---

11. The fact that Defendant refers to the release in her brief as "General Release" instead of "Release and Settlement Agreement" gives us an additional reason to question whether what we are looking at is the same document presented to the trial court as Exhibit 1.

The release presented with Defendant's motion for summary judgment stated: "IT IS UNDERSTOOD AND AGREED THAT ALL OF THE CLAIMS OF ARTHUR ROGERS AND NORMA ROGERS ARISING OUT OF CASE NUMBER 107–CC4274 ARE FULLY AND FOREVER RESOLVED FOR THE CONSIDERATION MORE FULLY SET FORTH HEREIN." However, the title of the document, "Release and Settlement Agreement" bore an asterisk. An asterisk note inserted at the bottom of each of the two pages of the release stated, "Except that Arthur and Norma Rogers specifically reserve their right to pursue their claim for additional damages against Cambridge Insurance in that the settlement as set forth in this release does not completely and fully satisfy all damages sustained by Arthur and Norma Rogers as a result of this accident." The trial court heard evidence that Plaintiff signed the release only after it was so modified.

Plaintiff testified that he did not get any proceeds from the $50,000 check tendered to Plaintiff's counsel "because the lady that sent the check had to okay the changes before, you know, it could be disbursed." The deposition of attorney Laurel Stevenson (former counsel for Defendant) was presented to the court wherein she testified that she had not settled the case before she left her employment with the firm representing Defendant. A letter from Ms. Stevenson was also admitted into evidence. That letter stated that the $50,000.00 draft enclosed with it was to be held in trust until the release was executed. Attorney Mike Archer testified that he took over the defense of Plaintiff's claim after Ms. Stevenson left the firm. Mr. Archer asked Plaintiff's counsel to either make a counter-offer or return the money. Mr. Archer thereafter received a check from Plaintiff's counsel's trust account for $50,000.[12]

The trial court had previously denied Defendant's motion for summary judgment based upon Plaintiff's execution of the "Release and Settlement Agreement." After the June 11th "bench trial," the trial court ruled that the release did not constitute an affirmative defense, stating, "Notwithstanding [Defendant's] check being cashed and held in escrow by agreement, Plaintiff's amendment of [the] terms is found to rise to the level of a 'counter offer' rather than acceptance as advocated by [Defendant]. The Court will therefore sustain Plaintiff's request that [the] 'release' will not be an available affirmative defense at trial."

■ "The general rule is that in reviewing a court-tried case, we will affirm the judgment unless it is against the weight of the evidence, there is no substantial evidence to support it, or the trial court has erroneously applied or declared the law." *Muilenburg, Inc. v. Cherokee Rose Design & Build, L.L.C.*, 250 S.W.3d 848, 851 (Mo.App. S.D.2008). Matters of contract interpretation, however, are questions of law that we review *de novo*. *Id.* Settlement agreements are essentially contracts. *Custom Builders Corp. v. Chesebro*, 825 S.W.2d 15, 17 (Mo.App. E.D.1992).

Defendant argues that the "Release and Settlement Agreement" was a settlement offer "supported by a tender of consideration of a settlement check for $50,000.00." She asserts that "Plaintiffs accepted this settlement by signing the General Release before a notary public and returning the signed [r]elease to [D]efendant." Defen-

12. Attorneys Stevenson and Archer were associated with the law firm of Franke, Schultz, and Mullen, P.C. Eventually, "the defense of this [l]awsuit was undertaken by Rabbitt, Pitzer, Snodgrass, P.C. by Attorney Steven J. Hughes."

dant suggests that while "Cambridge Insurance" may not have been released based upon the additional language added to the release, Defendant was released because the additional language "in itself did not create an ambiguity as to the party's clear intent to release *all* claims against [*Defendant* ]." Defendant argues that the trial court considered parol evidence in determining whether Plaintiff intended to release Defendant and thereby violated the rule that parol evidence is inadmissible as to the parties' intentions when the contract is unambiguous, citing *Mid Rivers Mall v. McManmon*, 37 S.W.3d 253, 255–56 (Mo.App. E.D.2000).[13]

 "The parol evidence rule does not prevent relevant parol evidence from being admitted; but prohibits the trier of fact from using that evidence to vary, alter or contradict the terms of a binding, unambiguous and integrated written contract." *State ex rel Missouri Highway & Transp. Comm'n v. Maryville Land P'ship*, 62 S.W.3d 485, 489 (Mo.App. E.D.2001). If the contract is not complete, then the parol evidence rule does not apply. *Kenney v. Vansittert*, 277 S.W.3d 713, 719 (Mo.App. W.D.2008) (internal citation omitted). "[A] contract is not complete until the proposition of one is presented to the other and accepted as presented. The acceptance of a proposition presented by one party must be accepted by the other in the form tendered; if the acceptance purports to add or alter the proposition made, then neither party is bound." *L.B. v. State Comm. of Psychologists*, 912 S.W.2d 611, 617 (Mo. App. W.D.1995) (citations omitted). "Where the purported acceptance of an offer introduces new or variant terms or

omits, enlarges or modifies the terms of the offer, no contract has been formed and a response amounts to a counter offer and rejection of the original offer." *F.S. Crook Inc. v. C & R Heating & Serv. Co., Inc.*, 787 S.W.2d 763, 764 (Mo.App. E.D.1990).

Here, the purported acceptance of the settlement agreement came with a new term added. The original offer provided, "ALL OF THE CLAMS OF ARTHUR ROGERS AND NORMA ROGERS ARISING OUT OF CASE NUMBER 107–CC4274 ARE FULLY AND FOREVER RESOLVED FOR THE CONSIDERATION MORE FULLY SET FORTH HEREIN." The unmodified release also purported to

> RELEASE AND FOREVER DISCHARGE Angela Hester, deceased, Ashley Gilbert defendant ad-litem, Progressive Northwestern Insurance Company, their agents, employees, servants, predecessors, successors, assigns, insurers and attorneys, *and all other persons, firms and corporations and whomsoever* of and from any and all claims and demands which we now have or may hereafter have on account of or arising out of the said incident, casualty or occurrence, as well as those consequences thereof which may hereafter develop and those which have already developed or are now apparent.

(Capitalization as in original, italics added). When the asterisk and new term were added to the document, a significant modification was made—it no longer resolved *all claims* against *all persons or entities*. The change amounted to a reservation of a claim and did not release all

**13.** Defendant also asserts in the argument portion of his brief that Plaintiff's counsel "was clearly a necessary witness to the issues raised at the bench trial." Defendant asserts it was improper for Plaintiff's counsel to act as both witness and counsel as no exception to Rule 4–3.7 applied. We note that the record of the bench trial does not reflect that this issue was presented to the trial court, it has not been raised in any of Defendant's points on appeal, and we do not address it.

persons or entities "whomsoever." As a result, it did not constitute an acceptance of the original settlement offer. *See L.B.,* 912 S.W.2d at 617. The addition of the new language reserving the right to seek additional damages was simply "a counter offer and rejection of the original offer." *F.S. Crook Inc.,* 787 S.W.2d at 764. As the face of the document itself supports the trial court's conclusion that the release, as modified, was a counter-offer, it cannot be said that the trial court impermissibly relied on parol evidence in reaching its conclusion. Because the "judgment" challenged in Defendant's first point was an interlocutory ruling only, not a final appealable judgment, and Defendant did not attempt to present any evidence in support of its affirmative defense of release during the jury trial, the matter was not properly preserved for our review. Point I is denied.

### *Point III—Claiming a Misstatement of Law Regarding the Burden of Proof*

■ Defendant asserts in her third point that the trial court erred in denying her motion for new trial "because the court allowed Plaintiff's counsel to misstate the law in the presence of the jury in that Plaintiff's counsel improperly argued that Defendant had the burden of proof of having Plaintiff examined by a medical doctor and/or valuing Plaintiffs case."

■ "Whether a new trial should be granted because of jury argument is a determination within the sound discretion of the trial court." *Brown v. Cedar Creek Rod & Gun Club,* 298 S.W.3d 14, 20 (Mo. App. W.D.2009). "Judicial discretion is abused when the trial court's ruling is clearly against the logic of the circumstances then before the court and is so arbitrary and unreasonable as to shock the sense of justice and indicate a lack of careful consideration." *Giddens v. Kansas City Southern Ry. Co.,* 29 S.W.3d 813, 819 (Mo. banc 2000).

Once again, Defendant failed to cite specific passages in the record in support of her argument. In her reply brief, Defendant points us back to her statement of facts. The reference there is to the following portion of Plaintiff's closing argument:

[Plaintiff's counsel]: And you should know this, [Defendant] can hire [her] independent medical examiner too. He [defense counsel] can send my client to St. Louis, Kansas City, just send him a check for his travel and have him examined and have his doctors review all these reports. And if they don't agree with Shane Bennoch, he can have his expert come in here and say, my client's a malingerer, my client's not hurt. I examined him, there was [sic] no problems—

[Defense counsel]: Judge, I'll object to all of this as improper argument and improper inference.

[Plaintiff's counsel]: He's allowed under the law to have the same experts I do and to have my client examined.

[Defense counsel]: Reciting the law to the jury is improper.

[Plaintiff's counsel]: I'm going to bring up the most recent southern case on this.

THE COURT: No more speaking objections. Here's what let's do. Ladies and gentlemen, please just remember what came in to you from the trial. Any argument about what was assumed in the trial is improper and don't consider it. And, ma'am, it's fine, we'll try not to interrupt you, let's just proceed.

During Plaintiff's rebuttal closing argument, the following exchange occurred:

[Plaintiff's counsel]: He [defense counsel] had a right to bring every expert

and have the client examined if he doesn't believe any of this. Now that's not credible. It's not credible of him to stand up here and pick at things like little licenses and CDLs and not bring you an expert to go have him examined. If he doesn't believe him, have him examined. If he's not credible, have him examined.

[Defense counsel]: I'll object to this as improper reference, Judge. The plaintiff has the burden of proof.

THE COURT: Plaintiff does have the burden of proof. You may proceed.

Defendant argues that "[i]t is improper and prejudicial for counsel to argue that defendant had the opportunity and the right to have plaintiff examined by any doctor of its choice[,]" citing *Hoffman v. Illinois Terminal R.R. Co.*, 274 S.W.2d 591, 595 (Mo.App.St.L.D.1955). Plaintiff counters that *Hoffman* "has been distinguished numerous times from cases with similar facts as the one at bar[,]" and cites *Hemann v. Camolaur, Inc.*, 127 S.W.3d 706, 711–12 (Mo.App. W.D.2004), and *Chailland v. Smiley*, 363 S.W.2d 619, 629 (Mo. banc 1963). In *Hoffman*, the plaintiff argued that the defendant had a right to have plaintiff examined by a doctor, but the court found that section 510.040 only permitted an examination upon request of a defendant upon order of the court for good cause shown.[14] 274 S.W.2d at 595. As a result, the argument was improper. The reviewing court declined to decide whether the trial court's curative comment after sustaining the objection was an abuse of discretion because the case was being remanded for another reason. *Id.*

 In *Hemann*, the court distinguished *Hoffman* because the plaintiff

there did not argue that the defendant had the right or obligation to have the plaintiff examined. 127 S.W.3d at 711. The court stated that Hemann's

> argument was more similar in effect to the arguments distinguished from *Hoffman in Chailland v. Smiley*, 363 S.W.2d 619, 629 (Mo. banc 1963), and *Eaves v. Wampler*, 390 S.W.2d 922, 929 (Mo.App. 1965); that is, "when considered in light of the entire record, the argument briefly commented on the fact that [p]laintiff's medical evidence was uncontroverted, a permissible argument, and it did not amount to prejudicial error."

*Id.* (footnote references omitted). Here, Plaintiff's counsel stated that Defendant was "allowed under the law to have the same experts I do and to have my client examined." This statement goes beyond arguing that the medical evidence was uncontroverted and was, therefore, improper. Upon objection, "[t]he trial judge is invested with a judicial discretion in determining what corrective action is appropriate and sufficient in such a case, and although reviewable his action will not be reversed unless it is manifest that he has been guilty of an abuse of judicial discretion." *Hoffman*, 274 S.W.2d at 595. Defendant objected, but requested no specific relief. The trial court instructed the jury to remember what came in as evidence, and that "[a]ny argument about what was assumed in the trial is improper and don't consider it." Defendant did not object to the relief provided by the trial court. On review, we presume that the jury followed the trial court's instruction. *See Brown*, 298 S.W.3d at 21. A party who fails to request additional relief may waive further appellate review of the matter. *See Woods*, 248 S.W.3d at 707. Here, we find

---

14. The version of the statute in effect at the time (1943) remains the same. Section 510.040, RSMo 2000.

nothing to rebut the presumption that the jury followed the trial court's instruction that it should not consider the improper argument.

Plaintiff's counsel, not easily deterred, made a similar argument in her rebuttal closing argument, stating that Defendant "had a right to bring every expert and have the client examined if [s]he doesn't believe any of this." Defendant properly objected but again did not request any specific relief and did not object when the trial court, in response to Defendant's objection, instructed the jury that "Plaintiff does have the burden of proof." While we do not condone counsel's repetition of an argument the trial court had already instructed the jury to disregard, we again find that the trial court's response was not an abuse of its discretion. The curative response plainly emphasized to the jury that the burden of proof continued to rest with Plaintiff. We presume the jury followed that instruction.

Concerning Defendant's claim that Plaintiff improperly argued that Defendant had the burden to "value" Plaintiff's case, the matter was first raised in *voir dire* in the context of Plaintiff's difficulty in trying to put a monetary value on pain and suffering. The purpose was to emphasize the importance of a juror's obligation to follow the law even if he or she does not agree with it. Plaintiff's closing argument reference to it was:

> But the jury—despite the fact that I just told you that no one would pay to have pain or any amount of money, ... the jury has to put a figure on that. ....
> All they can do is what the law allows and that is to award of [sic] damages for that suffering, that pain and suffering.
>
> And that you may not agree with that, you may not agree with that law, you

may think gosh, I don't like it, .... I didn't agree with the idea that I had to try and value this pain and suffering thing 'cause it's hard.

There was no one throwing numbers up, they didn't bring any big expert, they made us do this on our own. I don't like it.

> And, you know, when this—now that this is over when I was an officer of the court, when I was a sworn juror in this case to do and follow the law, I followed that law, .... I followed the law because, you know what, if I don't follow the law and make it work for [Plaintiff], then some day when I need the law it won't work.

Defendant eventually lodged a tardy objection, stating "Judge, that's improper. I'd move to strike that argument, the personalizing, it's improper." The objection does not indicate what specific argument Defendant thought improper and Defendant again requested no specific relief. In response to the objection, the trial court told the jury: "any reference to what did not happen at this trial is improper, so you just consider what the evidence was and we'll be fine." Defendant did not object to Plaintiff's counsel's reference to the failure to bring in an expert on the value of pain. Rather, her objection was to what she claimed was Plaintiff's "personalizing" the matter. She also did not object on the grounds that Plaintiff's argument resulted in a shifting of the burden of proof.[15]

"The scope of the objection may not be broadened or altered on appeal. Parties are prevented from advancing an objection to evidence on appeal that is different from the one presented to the trial court." *Lester E. Cox Med. Ctrs. v. Richards*, 252 S.W.3d 236, 239 (Mo.App. S.D.2008) (citation omitted). We find no

---

15. Defendant has not requested plain error review on this issue, and we do not provide it.

abuse of discretion by the trial court in denying Defendant's motion for a new trial based on improper closing arguments by Plaintiff's counsel. Point III is denied.

*Point VI—Alleging Cumulative Error*

Defendant argues in her final point that "the cumulative affect of points II–V unfairly prejudiced Defendant by depriving her of her right to a fair and impartial jury." Defendant concedes that it is difficult for such an argument to be persuasive, but maintains that her points, "when considered *collectively,* clearly illustrate a theme of impropriety, bias and prejudice." Plaintiff responds that points which fail to preserve anything for review are not grounds for cumulative error, citing *Roberson v. Weston,* 255 S.W.3d 15, 19 (Mo.App. S.D.2008) (cumulative error not preserved in motion for new trial; plain error review for cumulative error declined).

█ "Although a new trial may be granted due to cumulative effects of trial court errors even absent a decision that any single error would constitute grounds for reversal and a new trial, such relief will not be granted where, as here, 'there is no showing that prejudice resulted from any rulings of the trial court.'" *Woods,* 248 S.W.3d at 712 (quoting *Smith v. Wal-Mart Stores, Inc.,* 967 S.W.2d 198, 205 (Mo.App. E.D.1998)). Defendant failed to properly preserve and support any of his allegations of trial court error. Without any properly preserved errors to aggregate, there can be no showing of prejudice based on an accumulation of such errors.

Defendant's final point is denied, and the judgment is affirmed.

BARNEY, P.J. and LYNCH, JJ., concur.